VIOSCA, Justice ad hoc.
 

 This is an appeal by the City of New Orleans, defendant, from a judgment in favor of Thomas & Warner, Inc., plaintiff, in the sum of $5,157, which the District Court found to be the diminution in the value of plaintiff’s property, as the result of the construction of an underpass in the vicinity thereof. Plaintiff answered the appeal, asking that the judgment be increased to $18,000, the amount originally prayed for, and that the fees of its expert
 
 *1027
 
 witnesses be fixed at the sum of $1,200 each and taxed as costs.
 

 Plaintiff was the owner of a tract of land, with a commercial building thereon, located at the corner of Paris Avenue and Florida Avenue — a “J” Industrial Zone under the Zoning Ordinance of the City of New Orleans.
 

 To eliminate the Paris Avenue crossing of the railroad right-of-way on Florida Avenue, the City of New Orleans constructed the Paris Avenue Underpass as part of its Union Passenger and Grade Separation Program. This work was commenced in October of 1953 and completed in December of 1954.
 

 Plaintiff instituted suit in 1955 to recover $18,000' as damages alleged to have been suffered from—
 

 “1. Reduction and impairment of frontage on two important boulevards.
 

 “2.
 
 Loss of a corner location for a large industrial tract.
 

 “3. Loss (or denial and impairment) of accessibility to the property.
 

 “4. Loss due to substantial change in grade.
 

 “5. Creation of a dead-end or ‘cul de sac’.
 

 “6. Diminution and destruction of right and mean's of ingress and egress to the property.”
 

 Defendant- filed an' exception of no cause of action, which was overruled. Its answer is in the form of a general denial.
 

 The case was tried on the merits, and in his reasons for judgment the trial judge said:
 

 “ * * * Plaintiff contends his damage is threefold: (1) The downward slope of the sidewalk in front of its property on Paris Avenue makes it difficult for customers to park and approach the building, formerly a suburban shopping center, now an office building; (2) That Florida Avenue has been dead-ended, denying it and its customers and tenants access to Florida Avenue from Paris Avenue; and (3) That to offset the loss of the street parking, plaintiff must devote part of his lot (28 feet front on Paris Avenue, and widening in the rear) for off-street parking for its tenants. * * * ”
 

 The trial judge awarded plaintiff the sum of $5,157 to cover the damages claimed in Item (2) above and disallowed the other claims.
 

 Defendant reurges in this Court its exception of no cause of action. The exception is not well founded, since all of the well pleaded facts in the petition must be accepted as true for the purposes of the exception. In its petition plaintiff alleges that there has been a reduction in the value of its-property, because of changes in grade
 
 *1029
 
 and a “destruction of right and means of ingress and egress to and from” the property, which is sufficient to constitute a cause of action.
 

 The evidence shows that plaintiff’s property was leased to various retail stores at the time the . construction work began. Traffic flowed from Florida Avenue into Paris Avenue and from Paris Avenue into Florida Avenue, and plaintiff had a parking space behind its building, which could be reached'from either Florida Avenue or Paris Avenue. Access to the property facing Paris Avenue was 28 feet wide, and the Florida Avenue access was S3 feet.
 

 The grade of Paris Avenue was lowered when the underpass was constructed. To remove a traffic' hazard, a barricade was set up at the corner of Florida and- Paris Avenues to prevent vehicular traffic on Florida Avenue from entering Paris Avenue and to prevent vehicular traffic on Paris Avenue from entering Florida Avenue. However, no obstruction was placed either on the Florida Avenue frontage or the Paris Avenue frontage of plaintiff’s property, and ingress and egress to and from the property was not affected in any way. Travel to plaintiff’s property was made circuitous in some respects, in that motorists travelling on Paris Avenue, who desire to enter the property from Florida Avenue, are required to circle the block, and motorists travelling on Florida Avenue, who desire to enter the property from Paris Avenue are, likewise, required to circle the block.
 

 During the construction work plaintiff lost a number of its tenants and by agreement cancelled one lease. Just, prior to the completion of the underpass it began a renovation of its building, expending approximately $3,100, and, thereafter, rented it primarily for office purposes.
 

 Plaintiff’s cause of action is founded on Article I, Sec. 2, of the Louisiana Constitution of 1921, LSA, which provides:
 

 “*
 
 * * Except as otherwise provided in this Constitution, private property shall not be taken or
 
 damaged
 
 except for public purposes and after just and adequate compensation is paid.” (Italics ours.)
 

 When private property is damaged for public purposes, the measure of compensation is the diminution in the market value of the property damaged. McMahon & Perrin v. The St. Louis, Arkansas and Texas Railroad Company, 41 La.Ann. 827, 6 So. 640, 641.
 
 [1]
 

 
 *1031
 
 Plaintiff’s claim that its property has diminished in value as a result of the construction of this underpass is based primarily on the fact that there has been a decrease in rentals.
 

 Vernild G. Warner, vice-president of the plaintiff corporation, testified that his company received approximately $1,003 monthly in rentals before the construction of the underpass and approximately $775 monthly after its completion. He attributed this decrease to the fact that his company was compelled to give up renting to retailers and found it necessary to rent to persons desiring office space. His testimony is to the effect that they lost their retail renting trade because of the loss of the corner location with direct parking availability and immediate access and egress to and from their building from Florida and Paris Avenues. Working on a 7% basis, Warner, testifying as an expert realtor, placed a value of $79,000 on the property before the construction of the underpass and a value of $62,800 after the completion of the underpass. He placed a loss of $6,000 to $8,-000 on the destruction of the corner.
 

 Eugene Aschaffenburg, an expert realtor, testified that the value of the property was $67,300 before construction of the underpass and $51,900 afterwards. He estimated rental decreases at 15%.
 

 Plaintiff’s experts attributed the decrease in value to the change in grade of Paris Avenue, the closing of the entrance of Florida Avenue into Paris Avenue with a consequent loss of corner influence, and the loss of street parking.
 
 [2]
 
 As we see it, plaintiff is entitled to recover nothing for any of these causes.
 

 A review of the record shows that the grade in front of plaintiff’s property on Paris Avenue was changed from a decline to an incline. Charles E. Cassagne, Jr., Administrative Engineer for the New Orleans Railroad Terminal Board, testified that the roadway elevation, before the con
 
 *1033
 
 struction of Paris Avenue Underpass, immediately adjoining the Warner property was 4%o feet higher in a distance of approximately 20 feet — an approximate 21% grade. After the construction, the downward slope was approximately 16%. Cassagne stated that there was an abrupt embankment before the construction and after-wards there was a longer deeper slope. It is true that the grade of Paris Avenue, which was always higher than plaintiff’s property (because of the crossing over the railroad embankment), was raised an additional three and a half feet when the Gentilly Underpass was constructed some two or three years before the construction of the Paris Avenue Underpass. But, plaintiff has made no complaint and has brought no suit because of the change in grade caused by the construction of the Gentilly Underpass.
 

 We cannot find where the change in grade caused by the construction of the Paris Avenue Underpass has damaged plaintiff’s property. Before the construction, customers walked down to plaintiff’s property. Now, they walk up an incline, if they do not care to enter at the back of the building or at the corner. An examination of the photographs filed in the record shows that plaintiff’s property has been benefited rather than damaged by the lowering of the grade of Paris Avenue. It is the established law of this State that benefits may be set off against damages under the damage clause of Article I, Sec. 2, of the Constitution of 1921. Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654; State v. Cooper, 213 La. 1016, 36 So.2d 22.
 

 When the barricade was placed on Florida Avenue at its entrance into Paris Avenue, traffic was directed to a circuitous route, but this is not a compensable damage. In Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616, we held that under its police power a city may divert traffic without subjecting itself to liability. The same ruling applies to the present controversy. Plaintiff has cited the case of Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612, in support of its contentions. That case, clarified in Patin v. City of New Orleans, supra,
 
 [3]
 
 is not apposite. While we have held that damages are recoverable for a complete and permanent elimination of a driveway, Cucurullo v. City of New Orleans, La.Sup., 86 So.2d
 
 *1035
 
 103, we have, likewise, held that a public body, such as the Department of Highways, may limit the number of access connections to private property. State v. Dowling, 205 La. 1061, 18 So.2d 616. The case of Smith v. City of New Orleans, 230 La. 282, 88 So.2d 221, is not apposite. In that case the property was deprived of its use as a retail shopping center by the construction of embankments on both Gentilly Boulevard and Bruxelles Street, making access to that part of the property impossible.
 

 The District Judge was correct in ruling that plaintiff was entitled to recover nothing because of any change in the situation with respect to parking on public thoroughfares. Under its police power the City has the right to regulate parking on public streets, and can even prohibit .it where the situation justifies so doing. In the instant case, there is still front parking on Paris Avenue, the City not having exercised its police power to prohibit such parking.
 

 A diversion of traffic caused by the dead-ending of Florida Avenue, which plaintiff contends has deprived it of the advantages of a corner site, is the real reason for plaintiff’s complaint. Actually plaintiff’s building is still situated at the corner of Paris and Florida Avenues. Pedestrian traffic around this corner is in no way interfered with, and vehicular traffic may still reach every part of plaintiff’s property, but by a circuitous route. This is an inconvenience suffered by the public generally and not specially sustained by plaintiff’s property. It follows that any loss suffered falls within the realm of “damnum absque injuria.” Jarnagin v. Louisiana Highway Commission, La.App., 5 So.2d 660; Patin, supra.
 

 For the reasons assigned, the judgment of the trial court is reversed and set aside, and plaintiff’s suit is dismissed; all costs to be borne by plaintiff.
 

 [1]
 

 . In that case we said:
 

 “As in the .case of a taking the measure of compensation is the value of the property taken, so in the case of damage, the measure of compensation is the diminution in the value of the property.
 

 “There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been done to the property, i. e., to its value for rental and sale. Mere consequential injuries to the owners arising from dis
 
 *1031
 
 comfort, disturbance, injury to business and the like, remain, as they were before, damna absque injuria, — particular sacrifices which society has the right to inflict for the public good.”
 

 [2]
 

 . When asked to enumerate the causes of the reduced rentals, Warner replied:
 

 “The loss of the corner; change of grade, setting up on the air, making the access to the stores or offices a little more difficult; the adverse effect on ingress and egress to both the building and the parking area. I think that’s about it, sir.”
 

 Asehaff enburg testified as follows:
 

 “Well, I would say this may as well go through all of it, the fact that the property is raised or that the street is lowered in my opinion represents 50% of the damage to the property. I would consider the fact that Florida Avenue is deadended, and the various results of that deadending of Florida Avenue would represent about 30% of my value, and the fact that you have to go along way out Paris Avenue and turn around and come back to get in the property probably represents about 20%.”
 

 [3]
 

 . “ * * * The facts were that because of traffic regulations and safety rules in effect at and near the bridge approach, access to the premises involved was seriously impeded; and the street on which the properties abutted has been narrowed to such an extent that the buildings (wholesale and retail stores) could not be served by trucks; so that, clearly, the basis of the award was not diversion of traffic, but was interference with ingress to and egress from the properties, as well as obstruction of light and air and the impairment of the view from the front of the buildings. * * * ” [223 La. 703, 66 So.2d 617.]