96 So.2d 572

RUDOLPH RAMELLI, Inc.

v.

CITY OF NEW ORLEANS, Illinois Central Railroad Company, and Louisiana and Arkansas Railway Company.

Dr. Lee C. SCHLESINGER et al.

v.

CITY OF NEW ORLEANS, Illinois Central Railroad Company, and Louisiana and Arkansas Railway Company.

Eugene J. LILLIS

v.

CITY OF NEW ORLEANS, Illinois Central Railroad Company, and Louisiana and Arkansas Railway Company.

Nos. 43102–43104.

June 28, 1957.

McCloskey & Dennery, Moise W. Dennery, New Orleans, for appellants.

Lemle & Kelleher, Harry B. Kelleher, Milling, Saal, Saunders, Benson & Woodward, M. Truman Woodward, Jr., Alvin J. Liska, City Atty., Charles E. Cabibi, Asst. City Atty., New Orleans, for appellees.

HAMLIN, Justice ad hoc.

Plaintiffs in these consolidated cases appeal from a judgment of the trial court dismissing their suits for damages alleged to have resulted to their properties from the construction of the Broad Street Overpass. The issues are identical, and, although separate decrees will be rendered, the reasoning of this opinion applies to all three cases.

We are of the opinion that the findings and conclusions of the trial judge are correct, and we quote with approval from his reasons for judgment:

"In these consolidated suits, the plaintiffs seek to recover damages against the City of New Orleans, the Illinois Central Railroad, Louisiana-Arkansas Railroad, in various amounts, claiming that the plaintiffs are owners of property abutting on the South side of Poydras Street, City of New Orleans.

"The petitions, which are identical, all recite that as a result of the adoption of an ordinance on July 11, 1952 by the Commission Council of the City of New Orleans and by the signing of a contract by all defendants on August 25, 1952 and the execution of various agreements and committment therein contained and of the construction of the South Broad overpass by the defendants, City of New Orleans that,

"(a) Poydras Street has been moved by the City of New Orleans, a distance of approximately 100' from the South side of the Poydras yard railroad tracks to the North side of the railroad tracks,

"(b) The destination of the roadway immediately in front of the adjacent property owned by the plaintiffs has been changed by the City of New Orleans,

"(c) That the City of New Orleans has narrowed the effective width of the roadway by some 17' to a width of approximately 25',

"(d) That an elevated embankment for a railroad bank and tracks has been constructed by all the defendants in a portion of said roadway,

"(e) That the property is, or shortly will be no longer accessible to the nearest north-south arterial streets to the East and West,

"(f) That ingress and egress from said property is, or shortly will be available only by means of a non-arterial alleyway which has a roadway of only 25′ in width and then only after crossing the heavily utilized Poydras yard railroad tracks,

"that the property of the plaintiffs is presently in cul de sac and that the means of ingress and egress to the property has been unreasonably seriously impaired, and obstructed and that the plaintiffs no longer have reasonable access from their property to the general street system of New Orleans, that vehicular traffic on the roadway immediately in front and adjacent to the property ha's been seriously interfered with and that the view to and from the said property has been seriously impaired and that it has suffered diminution in its fair market value, that this diminution in the fair market value is special and material damages" (and) "is exclusive to the plaintiffs" (and) "that they will" (be) "deprived of this property without due process of law in violation of Article 1, Sec. 2 of the Constitution of the State of Louisiana [LSA] and the Fifth and Fourteenth Amendment of the Constitution of the United States, and by virtue of the rights granted by Article 1, Section 2 of the Constitution of Louisiana of 1921 as amended, plaintiffs are entitled to recover damages from the defendants.

"The evidence shows that prior to the construction of the Broad Street overpass that Poydras Street was paved on the South side of the then existing railroad tracks or yards and that it was an East and West traffic artery 41′ in width, that it had its terminal at South Broad Street into which traffic on Poydras could proceed by turning left up South Broad or by turning right down South Broad and by the same token, traffic on South Broad Street could enter Poydras. Since the building of the overpass, the roadway of the Poydras Street in front of plaintiffs' premises has been narrowed from 41′ to 25′ and one more railroad track has been added in the bed of what was formerly part of the existing roadway of South Poydras Street. At Poydras and South Broad where the overpass was built, this section of Poydras Street comes to a deadend. On the North side of Poydras Street, another roadway has been built that is North of the railroad tracks which according to the exhibits which are in the record, has access to the Broad Street overpass and connects with Broad Street by a route beneath the overpass when traffic is proceeding uptown. In order for the plaintiffs to reach this North Poydras Street roadway, it is necessary that they proceed several blocks in the direction of the Mississippi River or West to South Galvez Street to cross the railroad tracks at South Galvez Street to the North side of Poydras Street and turn and drive directly East to reach the Broad Street overpass. The difference in the

number of feet that any of the plaintiffs must now traverse in order to get to Broad Street is some 3,000 feet. In other words, there are no streets crossing the railroad yard from Broad at Poydras to Galvez at Poydras. The record shows that at times, boxcars are left on the tracks in front of the property belonging to the plaintiffs. This condition also existed prior to the improvements. The plaintiffs submitted as an expert witness, Mr. Max Derbes, Sr., a realtor in the City of New Orleans who gave the Court his opinion of the diminution of the value of the property of the various plaintiffs. He testified that all of the property had suffered a 20% diminution value made up as follows:

"Loss in value due to the fact that trucks and automobiles take a circuitous route to reach the plaintiffs' property being in a cul de sac.... 7%
"Loss of direct access for foot traffic............ 1%
"Narrowing of the street from 41' to 25'........ 2%
"Loss of view because of boxcars and loss of advertising value to the plaintiffs................ 2%
"Loss due to re-routing of the traffic............ 8%

"Each and every item composing the twenty percent estimated diminution value testified to by Mr. Derbes is due to the re-routing and diversion of traffic.

■ "There can be no recovery of damages by property owners because of the diversion of traffic by a municipality.

"The record shows that the access to and from South Claiborne Avenue to the East of the plaintiffs' property is the same as it always was. Plaintiffs lay great stress upon the fact that the roadway of South Poydras Street was narrowed from 41' to 25' and contend that the ingress and egress to their property has been impaired because of the narrowing of the roadway. The evidence shows that many streets in the City of New Orleans in J industrial sections are 25' in width. * * *"

Plaintiffs' principal contention on appeal is that the trial judge was in error in finding that each item composing the 20% estimated diminution value was caused by re-routing and diversion of traffic. As stated, supra, we believe that the trial judge was correct in his conclusions, and the only question presented for our determination is whether such damages are compensable.

■■ We have repeatedly held that under its police power a city may divert traffic without subjecting itself to liability. Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616; Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885; Britt v. City of Shreveport, La.App., 83 So.2d 476; Jarnagin v. Louisiana Highway Commission, La.App., 5 So.2d 660. This ruling applies to the instant controversy, and the diversion of traffic to plaintiffs' property brought about by the construction of the Broad Street Overpass is not such damage as to subject the defendants to liability under Article I, sec. 2, of the Louisiana Constitution of 1921.

There is no doubt that plaintiffs have suffered inconvenience by the narrowing of Poydras Street and by the diversion of traffic some three thousand feet, but this inconvenience is common to all other property owners within the same vicinity.

"* * * This is an inconvenience suffered by the public generally and not specially sustained by plaintiff's property. It follows that any loss suffered falls within the realm of 'damnum absque injuria.' Jarnagin v. Louisiana Highway Commission, La.App., 5 So. 2d 660; Patin [v. City of New Orleans, 223 La. 703, 66 So.2d 616]." Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885, 889. See, 18 Am.Jur., sec. 139, p. 765.

The trial judge concluded that plaintiffs' damages were damnum absque injuria. We see no manifest error in his findings and are not prone to disturb them. Heintz v. Heintz, 231 La. 535, 91 So.2d 784; Barrett Division of Allied Chemical & Dye Corporation v. Kennedy Saw Mills, Inc., 230 La. 143, 88 So.2d 5, Southwest Gas Producing Company, Inc. v. Hattie Brothers, 230 La. 339, 88 So.2d 649.

For the reasons assigned, the judgment of the trial court dismissing the suit of Rudolph Ramelli, Inc. is affirmed. Costs to be paid by Rudolph Ramelli, Inc.

PONDER, J., absent.