101 So.2d 218 (1958)
234 La. 730
Mr. and Mrs. Joseph J. CERNIGLIA
v.
CITY OF NEW ORLEANS.
No. 43548.
Supreme Court of Louisiana.
February 10, 1958.
On Application for Rehearing March 26, 1958.
Alvin J. Liska, City Atty., Charles E. Cabibi, Asst. City Atty., New Orleans, for defendant-appellant.
Clem H. Sehrt, Edward J. Boyle, Dudley A. Philips, Jr., Thomas M. Brahney, Jr., New Orleans, for plaintiffs-appellees.
FOURNET, Chief Justice.
The defendant, City of New Orleans, is appealing from a judgment of the District Court awarding to plaintiffs, Mr. and Mrs. Joseph J. Cerniglia, damages in the sum of $3,000 plus expert fees of $450 and *219 costs, in their suit against the defendant to recover $25,000 because of alleged injury to their property on Canal Boulevard at the corner of Homedale Avenue in New Orleans, formerly operated by them as a drugstore, as the result of the construction of an underpass designed to eliminate a grade crossing of railroad tracks traversing Canal Boulevard at an angle and laid on the right-of-way of the New Orleans Terminal Company, which right-of-way is adjoined, on the Lake Pontchartrain side, by plaintiffs' triangular lot.[1] The plaintiffs answered the appeal, asking that the amount allowed them be increased to $14,500, and that the award of expert fees and costs be affirmed.
Following trial on the merits,[2] consisting principally of expert testimony by two appraisers called by the plaintiff (the defendant called no experts), who estimated, respectively, that the property had diminished in value by $14,000 and $15,000 or by approximately half its worth previous to the construction of the underpassthe trial judge concluded that although in his opinion the plaintiffs had suffered grievous damage, such damage was of a type not compensable under recent decisions of this Court, and rejected plaintiffs' demands; however, a rehearing having been granted, upon further consideration the former judgment was annulled and set aside, and judgment was entered for plaintiffs in amount of $3,000, as stated earlier in this opinion, for the reason that "some elements of damage * * * do not fall within the doctrine of damnum absque injuria."[3]
Counsel for defendant-appellant, assigning as error the trial court's failure to maintain the City's exception of no cause of action or to correctly apply the rule that damages arising from certain conditions (inconvenience, change of route of traffic, loss of rent, business, and the like) do not create a ground for legal redress, argue that the instant case fits securely and completely within the framework of the two very recent decisions of this Court wherein damages were denied, i. e., Thomas & Warner, Inc., v. City of New Orleans, 230 La. 1024, 89 So.2d 885, and Rudolph Ramelli, Inc., v. City of New Orleans, 233 La. 291, 96 So.2d 572; and contend that the injury of which the plaintiffs complain in all respects falls within the realm of "damnum absque injuria." Counsel for plaintiffs, opposing this argument and seeking to have the award increased, rely heavily on the trial judge's remarks and contend that it was error for him to apply, to any degree at all, the rule of Patin v. City of New Orleans, 223 La. 703, 66 So. 2d 616, and Thomas & Warner, Inc., v. City of New Orleans, supra, since neither of those decisions is controlling here because of the facts of this case.
The defendant's exception of no cause of action, re-urged in this Court, is *220 not well founded; the petition's allegations recite damage unconnected with traffic diversion, inconvenience, etc., stating, for example, that ingress and egress had been cut off and that the property had been set apart and isolated; these are sufficient to state a cause of action.
The evidence, including photographs of plaintiffs' property prior to commencement of work on the underpass in 1951, shows the very wide thoroughfare known as Canal Boulevard to have outbound and inbound traffic lanes, separated by a spacious neutral strip, with plaintiffs' property abutting the outbound lane on the right (leading away from the City and toward Lake Pontchartrain), their building being situated some 20 feet back from the street curb, the entrance centered on the Canal Boulevard side, and a large illuminated sign extending at a right angle over the sidewalk bearing the words "Cerniglia" and "Pharmacy." The railroad tracks were on an embankment some three feet higher than normal grade. It was possible to park a car in Canal Boulevard and step immediately onto the sidewalk in front of the drugstore; pedestrian traffic from the same (i. e., outbound) direction had to cross the railroad tracks, descend about five steps to sidewalk level (protected from the street by a retaining wall which sloped down to normal grade), and then proceed a short distance to plaintiffs' store. Other photographs, showing the appearance of Canal Boulevard after completion of the project in early 1953, picture the underpass with the neutral strip gradually narrowed, then widened to resemble an hourglass, and the highway's lanes brought close together to pass between the supports for the tracks at the greatest depth, then widened to occupy their original locations, with sidewalks continuing the distance of the underpass on either side of the two traffic lanes. According to the testimony, in the accomplishment of the project the grade of the railroad embankment was elevated approximately 5.4 feet, the roadway of Canal Boulevard was gradually lowered to a depth of some six feet at the lowest point, and moved away from its former location to a new curb line. The difference in elevation between normal grade and the present traffic lanes became grassy slopes, with steps about midway the rise on either side of the underpass to permit ascent to normal grade, if desired, without the necessity of walking to the end of the underpass. Steps of this type are located in front of plaintiffs' property, leading to a paved roadway at normal grade, eighteen feet wide, which, beginning at plaintiffs' property line and the right-of-way and abutting the present six foot wide sidewalk in front of plaintiffs' building, continues in front of the subject property, crosses Homedale Avenue, passes in front of three other structures, and joins Canal Boulevard where that thoroughfare reaches normal grade. Vehicular access to plaintiffs' property, therefore, is by a U-turn from Canal Boulevard, or by a right turn at the next intersection and a trip around the block to reach Homedale Avenue. Inbound traffic, after traversing the neutral ground at the last available passage, must of necessity take the round-the-block approach because access to Homedale Avenue across the neutral ground is no longer possible.
The continuance of plaintiffs' business during construction work on the underpass was rendered very difficult, and following completion of the project proved to be unprofitable. The premises remained vacant for a while; then, following some interior alteration and modernization, were rented to a doctor for his professional use, and are now producing a fair market rental.
The experts were of the opinion that the value of the corner as a retail outlet had been destroyed because of the removal of Canal Boulevard to a new curb line location (the greatest distance being some 63 feet), and the loss of corner influence *221 since Homedale Avenue no longer has a passage across the neutral ground. Emphasizing that a customer was apt to patronize an establishment when he could park his car curbside on the Boulevard and step into the front door, whereas if he had to make a sharp U-turn to return to the place of business or take a circuitous route he was apt to take his patronage elsewhere, they attributed the decrease in value to the fact that the property no longer abuts Canal Boulevard, ingress and egress are difficult and parking is restricted; also, that prominence of location, advertising features for the motorist and pedestrian, easy approach and accessibility have been destroyed by obstructionsby the stairs and by lowering Canal Boulevard.[4]
From a perusal of the cases cited by the district court, and noting the similarity of factual situations with the case under consideration, the conclusion is inescapable that the rules announced in those cases are controlling. For example, in the Patin case[5] and again in the Thomas & Warner case,[6] it was said that traffic may be directed to a circuitous route, under the City's police power, without liability on the part of the City for resulting damage; and in the second named case, that a plaintiff is entitled to recover nothing because of any change in the situation with respect to parking on public thoroughfares. The rule announced in the Ramelli case,[7] a recent decision which also presented a similar factual situation, was that inconvenience caused by narrowing of a street and diversion of traffic due to construction of an overpass were disadvantages common to all the other property owners within the same vicinity and not compensable.
On the other hand, the instant case presents elements of damage which, as shown by photographs in the record and supported by the testimony, are not common to all other property owners in a like situation; this is because of the peculiar location of plaintiffs' property with reference to the lowered one-way thoroughfare. The trial judge, doubtless with these considerations in mind, found that some of the elements of damage in this case do not fall within the doctrine of damnum absque injuria, and that these damages were compensable to the amount of $3,000. We are not disposed to disturb that award.
For the reasons assigned, the judgment appealed from is affirmed.

On Application for Rehearing
PER CURIAM.
In their application for a rehearing the appellees herein complained that we erred in failing to allow interest at the legal rate from date of judicial demand and further that we failed to consider the payment of costs other than experts' fees.
In their answer to the appeal appellees prayed that the judgment be amended "by increasing the amount allowed therein for damages to $14,500 and awarding legal interest from date of judicial demand until paid and all costs and affirming the sum of $450 allowed for experts' fees." However, it was and is significantly observed that in their petition plaintiffs failed to expressly claim legal interest from date of judicial demand. The said prayer of their petition was for judgment in the amount sued for, for the fixing of reasonable fees for the experts testifying on their behalf, for the *222 taxing and assessing of said fees as cost, and for all cost.
Article 553 of the Code of Practice provides: "Interest shall not be allowed by the judgment, unless the same have been expressly claimed, and then only in cases in which the law permits such interests to be stipulated."
Manifestly, having failed to expressly claim any interest due as required by Code of Practice, Article 553 the judgment of the lower court could not have allowed the same and our affirmance of the judgment rendered below is in full compliance with our law.
It is true that plaintiffs prayed for an assessment of all cost against the defendant. But it is equally true that under Article 157 of our Code of Practice that as related to the cost of the suit it is not required that they should have been claimed in the petition or answer in order to recover them. Therefore, under the provisions of said article all costs follow the judgment and are due to the successful litigant whether prayed for or not.
For the reasons assigned we conclude that our decree is correct.
NOTES
[1] No part of plaintiffs' property was taken; their cause of action is founded on Article 1, Section 2 of the Louisiana Constitution of 1921, providing compensation for damage in cases of expropriation. Their claim of damage is the alleged diminution in market value as a result of the construction of the underpass. Their lot measures 43.56 feet on Canal Boulevard, 59.85 feet on Homedale Avenue, and 74.10 feet along the right-of-way; the improvements consist of a building of frame construction, having an upper floor suitable for use as living quarters.
[2] Defendant's exceptions of no cause and no right of action having been overruled, its answer was in the form of a general denial; and the same exceptions, upon being re-urged at the commencement of trial, were referred to the merits.
[3] The trial judge expressed the opinion, in his judgment following the rehearing, that plaintiffs' property has suffered a diminution in market value amounting to $14,500 as a direct result of the construction of the underpass, and stated that he would render judgment for that amount except for the fact that the court was bound by the decisions of this Court in Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616, and Thomas & Warner, Inc., v. City of New Orleans, 230 La. 1024, 89 So.2d 885.
[4] Under cross examination, Mr. Frank B. Clesi, one of the two experts (the other being Mr. Guy L. Deano), admitted that the location and building, under present conditions and besides the use to which it is now devoted, would be adaptable to "a radio repair shop, a little television shop, an office not requiring any prominence of location, or any little business not requiring any advertising features or accessibility."
[5] Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616.
[6] Thomas & Warner, Inc., v. City of New Orleans, 230 La. 1024, 89 So.2d 885.
[7] Rudolph Ramelli, Inc., v. City of New Orleans, 233 La. 291, 96 So.2d 572.