238 So.2d 372 (1970)
Clama HEBERT et al., Plaintiffs and Appellees,
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Defendant and Appellant.
No. 3134.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1970.
Rehearing Denied August 26, 1970.
Writ Refused November 9, 1970.
Norman L. Sisson, Robert J. Jones, William T. Kivett, Ben C. Norgress, by Ben C. Norgress, Baton Rouge, for defendant-appellant.
Hunt, Godwin, Painter & Roddy, by E. C. Hunt, Jr., Lake Charles, for plaintiffs-appellees.
*373 Before FRUGÉ, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiffs seek damages caused by the construction of a new highway in front of their property. The district judge awarded $17,337.50. Defendant appealed. Plaintiffs answered the appeal, seeking an increase in the award.
Essentially, the State contends that any damages to plaintiffs' property are caused solely by a rerouting of traffic from the old to the new highway, and are not compensable. Plaintiffs contend their property is damaged by dead-ending the old highway and impairing their access, for which they are entitled to compensation.
The evidence shows that the plaintiff, Clama Hebert, is the owner of a 6-acre tract located in a rural area on U. S. Highway 90 about 1½ miles east of the Sabine River, which is the boundary between Louisiana and Texas. Improvements on this land include his personal residence and a night club, called "The Big Oak." Also located on the tract are two residences owned respectively by his sons, Allen C. Hebert and Harris J. Hebert, the other plaintiffs in this suit.
Prior to the construction of U. S. Interstate Highway No. 10, U. S. Highway 90 was a 4-lane major highway running east and west through southern Louisiana into Texas. Plaintiffs' property fronted on the north side and both east and west bound traffic could easily turn and enter the driveway to his night club. This and one or two other nearby night clubs were frequently patronized by residents of Texas, since in that state liquor cannot be purchased by the drink.
When Interstate 10 was constructed in 1966, it followed the right of way of U. S. 90 from the Sabine River in a northeasterly direction to a point approximately 1,000 feet west of the property of the plaintiffs. At that point, Interstate 10 continues straight, leaving old U. S. Highway 90 which turns to the left and runs in a more northerly direction. Since Interstate 10 is a no-access highway, old U. S. 90 was dead-ended about 1,000 feet west of plaintiffs' property but it remains open to the east of their premises.
Also, at a point about 700 feet east of plaintiffs' property the four lanes of Highway 90 were converged into a 2-lane asphalt road, which now runs in front of the premises and on to the dead end. Additionally, a hurricane fence separates Interstate 10 from U. S. 90. Although motorists on Interstate 10 can see plaintiff's signs, they must leave that thoroughfare at the Stark interchange (east of the club) and travel about 1½ miles on the Stark highway and old U. S. 90 to reach the club.
No part of plaintiffs' land was actually taken for Interstate 10. Their complaint is that the market value of their property has been diminished by the dead-ending of U. S. Highway 90, the rerouting of eastwest traffic from U. S. 90 to Interstate 10 and the changing of U. S. 90 in front of their property from four lanes to two.
Our jurisprudence is firmly established that damages caused by rerouting or diversion of traffic from one highway to another are not compensable where the means of access to the premises are not substantially impaired. Jarnagin v. Louisiana Highway Commission, La.App., 5 So.2d 660 (2d Cir. 1942); Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885; Rudolph Ramelli, Inc., et al. v. City of New Orleans, 233 La. 291, 96 So.2d 572; Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218; State, Through Department of Highways v. Chesson, La.App., 229 So.2d 763 (3rd Cir. 1970); Reymond v. State, Through Department of Highways, 255 La. 425, 231 So.2d 375 (1970).
Even though no portion of an owner's property is actually taken, he may *374 recover damages if his ingress and egress are substantially impaired. Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612; Patin, et al. v. City of New Orleans, 223 La. 703, 66 So.2d 616; Efurd v. City of Shreveport, 235 La. 555, 105 So.2d 219.
Also pertinent here is the rule that damage to property not actually taken is not compensable unless it is special or peculiar to the particular property of the claimant, rather than general, in the sense that it is suffered by the public at large or those who live in the neighborhood. See Reymond v. State Department of Highways, supra, and the authorities cited therein. Thus, in the present case, it must be shown that any impairment of access is special or peculiar to plaintiffs' property, rather than to the general public or to the other property owners on old U. S. Highway 90.
The most recent case from our Supreme Court on the subject is Reymond v. State Department of Highways, supra, which reads in pertinent part as follows:
"The testimony and the pictures, maps, and other exhibits offered in evidence bring us to the following factual conclusions. Interstate 10 is elevated near plaintiff's house with Eugene Street rerouted by a slight curve so as to come under the overhead structure and reach the houses of the plaintiff and her neighbors. Eugene Street was a deadend street one house beyond the plaintiff's home before the construction of Interstate 10, and it remains so. The access to plaintiff's house has not been cut off, but has been made only slightly more circuitous. Plaintiff will now suffer the noise of traffic, and her surroundings are not so lovely to view.
"(16-18) The criterion for assessing the special damage suffered by a property owner because of the construction of a public project under eminent domain is whether that damage is not suffered by those in the general neighborhoodthat is, whether the damage is peculiar to the individual who complains. In this case the effect of the construction is not limited to the neighborhood, or even to plaintiff and her three neighbors, and certainly not to the plaintiff alone. All the owners of such property, like the plaintiff here, must suffer the noise of traffic and must view less pleasant surroundings. In the metropolitan areas through which Interstate 10 passes, literally hundreds of houses which once had ingress and egress by directing routing of streets are now situated below elevated multi-lane highways and are reached by circuitous or more inconvenient routes. These are not in themselves special damages; they have not been and are not recoverable. Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616; Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885; Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572; Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218. Even when, as in the instant case, an actual diminution in market value of the property is found to exist because of these factors, this diminution is not compensable. Damages which cause discomfort, disturbance, inconvenience, and even sometimes financial loss as an ordinary and general consequence of public improvements are not compensable, and are considered damnum absque injuria."
In the Reymond case three justices dissented, they being of the opinion that under the particular facts the damages to Mrs. Reymond's residence were special. The rationale of the dissents is expressed by Justice Sanders as follows:
"Contrary to the factual findings of the majority, the record reflects that the Interstate Highway construction completely eliminated that portion of Eugene Street north of the Reymond property. For access to the property, a service road was constructed under the Interstate, forming a cul-de-sac. The Interstate *375 Highway, a wall of concrete higher than the residence and very close to it, left the property physically isolated from the general residential neighborhood.
"Both lower courts found the plaintiff had established special damages in that because of limited access and isolation, the market value of the property had depreciated. Two realtors attested to the diminution in value. In fixing the amount at $6,250.00, the courts relied upon the testimony of Mr. Verdie Reece Perkins, a realtor of outstanding reputation and great experience. I concur in this finding."
It is apparent that the facts of the present case are not as strong for the landowner as in the Reymond case. The residences of Mrs. Reymond and her three neighbors were isolated on a "cul-de-sac" to which the only access was a service road under the overhead structure of Interstate 10. Also, a concrete wall, higher than the residence, was very close to Mrs. Reymond's property. Despite these facts, the majority held Mrs. Reymond's access was not substantially impaired, that her damages were caused by rerouting of traffic and were general to the neighborhood and not compensable.
In the present case, access to old U. S. Highway 90 has not been substantially impaired. Trucks and other vehicles can easily reach plaintiff's night club. At the time of the trial of this matter, the club was still in operation and there was no problem of access from U. S. 90.
In our view, plaintiffs' strongest argument is that they have suffered special damages caused by the deadending of U. S. Highway 90 at a point approximately 1,000 feet west of their premises. For a general discussion of these so-called "cul-de-sac" cases, see Nichols on Eminent Domain, Section 6:4443 and 29A C.J.S. Eminent Domain § 126, p. 502, et seq. As these authorities indicate, most cases hold that there is special damage where the highway in front of property is discontinued or obstructed so that access is made impossible. However, where, as in the present case, only one end of a thoroughfare is cut off, leaving access in the other direction unimpaired, the authorities are not in agreement.
There are no Louisiana cases on the precise issue. Plaintiffs cite Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612 (1942), but that case is readily distinguishable. The facts show that because of traffic regulations and safety rules in effect at and near the bridge approach, access to the premises involved was seriously impaired. The street on which the property abutted was narrowed to such an extent that the buildings (wholesale and retail stores) could not be served by trucks. Clearly, the basis of the award was not diversion of traffic but interference with the immediate ingress and egree to the property.
Plaintiffs also cite Patin, et ux. v. City of New Orleans, et al., 223 La. 703, 66 So.2d 617 (1953). In that case Patin owned a service station and repair shop on the corner of Franklin Avenue and Industry Street in New Orleans. An overpass was constructed on Franklin Avenue, supported by concrete pillars about 10 feet in height, but there still remained an 18 foot wide access to Franklin. An opening beneath the overpass on Franklin permitted the continuation of traffic on Industry Street. The court held the property had suffered a total diminution in value of $10,000, of which ¾ was due to diversion of traffic and was noncompensable. Recovery was limited to the $2,500 attributable to impairment of access by the overpass on Franklin.
State of Louisiana, Through Department of Highways v. Terry, 194 So.2d 144 (1st Cir. 1966) is also cited by plaintiffs. There, access to plaintiff's property in a rural area on Greenlaw Road was destroyed by the taking of property of a third person some distance from plaintiff's *376 property line. The facts showed that plaintiff's property was the only tract serviced by the blocked route. No other persons in the neighborhood were forced to use the circuitous route made necessary by the taking. Also, this new route was over roads which were blocked by flooding several times a year. Under the circumstances, the court held the damages to plaintiff's property caused by loss of access were special to his tract of land and were recoverable.
The cited cases relied on by plaintiffs are distinguishable on the facts from the present matter. Here, plaintiffs' property still has easy access to Highway 90. It is true that traffic in one direction has been blocked but this is not the substantial cause of plaintiff's damage. Even if U. S. 90 remained open in both directions, the damages to plaintiffs' property would be essentially the same. The damage is caused by the rerouting of traffic to Interstate 10 and not by the barricading of Highway 90.
Furthermore, the damage to plaintiffs' property is not special. The same damage, to a degree, has been suffered by all other property in the neighborhood. The evidence shows that other night clubs in the immediate area on Highway 90 have suffered this same damage. And, of course, all of the property which is situated on old U. S. Highway 90 has suffered a loss in value for commercial purposes because of this rerouting of traffic.
We conclude plaintiffs have suffered no damage which is compensable. It follows that the award of expert witness fees to Mr. Norman Terry and Mr. Moses Ableman, whose testimony was designed only to establish such damage, must be set aside. See Reymond v. State Department of Highways, supra.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of defendant and against the plaintiffs rejecting their demands at their costs. The expert witness fees awarded to Mr. Norman Terry and Mr. Moses Ableman and assessed as costs are also set aside. All costs of this appeal are assessed to the plaintiffs.
Reversed and rendered.
FRUGÉ dissents, he agrees with Trial Judge.
On Application for Rehearing.
En Banc, Rehearing denied.
FRUGÉ, J., votes for rehearing.
TATE, J., not participating.