BLANCHE, Judge.
The defendant-appellee, Helen Seal Rivers, was the owner of two lots in the City of Bogalusa, Washington Parish, Louisiana, which were located on the east side of Vance Street (now Sullivan Drive) and bounded on the south by Bund Street and on the north by Charlevolt Street. As part of State Project No. 30-03-09, the State of Louisiana, through the Department of Highways, expropriated approximately 4.57 feet from the entire frontage of the property on Vance Street, a length of approximately 209.94 feet and expropriated a depth of 10 feet from the entire length of the property fronting on Charle-volt Street. The total area expropriated from the defendant was 1,784.01 square feet. The purpose of the acquisition was for the construction of the new bypass route of Louisiana-21 through Bogalusa, Louisiana. Vance Street at the time of the expropriation was a two-lane, blacktop street with open ditches. The construction of the highway converted Vance Street into a four-lane, bypass route with concrete surface and roll-over curbs. Plaintiff-appellant, State of Louisiana, through the Department of Highways, deposited the full sum of $215 as just and adequate compensation for the land taken only, since there were no improvements within the taking. No sums were deposited for severance damages to the remaining property as the State appraisers had estimated that no severance damages had occurred as a result of the taking. The total area of the tract contained 19,484.01 square feet, and after the taking there was a remainder of 17,700 square feet.
At trial it was stipulated that the value of the property expropriated was thirteen cents per square foot or $232 or $17 more than deposited and that the value of the land remaining would also be thirteen cents per square foot. Counsel for the landowner denies this assertion as untrue and a misstatement of the facts. The statement on this issue is quoted from the record:
*918 “BY MR. ANTHONY: It is further stipulated that the value of the remaining part of 17,700 square feet is also thirteen cents a square foot.
“BY THE COURT: So all your problem is on severance.” (Record, p. 84)
While we believe the stipulation of counsel for the landowner was inadvertent, it is as shown above and, therefore, far from being untrue or a misstatement of fact by opposing counsel. Our holding that the same was inadvertent is based on the fact that both of the landowner’s witnesses testified that the land as well as the improvements was damaged, contrary to the foregoing stipulation, and their appraisals were accepted by the trial judge.
Four houses were located on the land from which the expropriated property was taken. Three of these houses were located directly on Sullivan Memorial Drive (formerly Vance Street) and one house was around the corner from the highway on Charlevolt Street. These houses were designated as 908 Sullivan Memorial Drive, 904 Sullivan Memorial Drive, 1752 Charle-volt Street and 1750 Charlevolt Street. The neighborhood in which these houses was located was a residential area. Three of the houses were being rented to tenants by the landowner and one of the houses was occupied by a sister of the landowner rent free. Two houses faced on Sullivan Memorial Drive and two faced on Charle-volt Street, being located on the corner of Sullivan Memorial Drive and Charlevolt Street. The evidence further shows that prior to the expropriation the house identified as being located at 908 Sullivan Memorial Drive was located approximately 31 feet from Vance Street. The house identified as 904 Sullivan Memorial Drive was located approximately 24 feet from Vance Street. The east side of the house located at 1752 Charlevolt Street was approximately 15 feet from Vance Street. The house identified as 1750 Charlevolt Street was approximately 21 feet from Charlevolt Street. After the taking, the houses on Vance Street were 4.5 feet nearer to the street. Prior to the expropriation Vance Street was an asphalt, residential street, and inasmuch as it terminated on the north at Bogalusa Creek and on the south at Riverside Drive, it was not used as a through-traffic artery as it was after the taking. The evidence reflected that it was in a quiet residential area with a relatively small amount of traffic which was local in nature.
The sole question presented to the Court is whether the landowner suffered any severance damages as a result' of the expropriation.
The landowner in expropriation cases has the burden of proving his claim. State of Louisiana, Through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1962). Damages to land not taken cannot be presumed, and unless the landowner shows by competent evidence that the value of his remaining land has been diminished by the taking, compensation will be limited to the value of the land actually take. LSA-R.S. 48:453; Louisiana Highway Commission v. Ferguson, 176 La. 642, 146 So. 319 (1933). The burden of proving alleged severance damages to the remainder of property involved in an expropriation proceeding rests upon the owner who must establish such damages with legal certainty by a preponderance of the evidence. Central Louisiana Electric Company v. Dunbar, 183 So.2d 111 (La.App. 1st Cir. 1965); Hatcher v. Gulf States Utilities Company, 219 So.2d 208 (La.App. 1st Cir. 1969). Concerning severance damages, the following quotation from the case of State, Through Department of Highways v. Singletary, 185 So.2d 642 (La.App. 1st Cir. 1966), is in point:
“As severance damages, the landowner is entitled to be awarded the difference between the market value of the property immediately prior to and immediately after the taking. This statement is too well established in our jurisprudence to need citation.
*919 “Frequently there is less divergence of opinion in determining the value of property prior to expropriation than there is in arriving at the market value of property after taking. No two severances are alike in most cases. Each expropriation must be considered in the light of the circumstances of severance created thereby.” (185 So.2d at 644).
Also pertinent here is the rule that damage to property not actually taken is not com-pensable unless it is special or peculiar to the particular property of the claimant, rather than general, in the sense that it is suffered by the public at large or those who live in the neighborhood. Reymond v. State, Through Department of Highways, 255 La. 425, 231 So.2d 375 (1970); Hebert v. State, Through Department of Highways, 238 So.2d 372 (La.App. 3rd Cir. 1970).
The Reymond case and the legal principle therein enunciated was discussed by Judge Sartain of our Court in State of Louisiana, Through Department of Highways v. Garrick, 242 So.2d 278 (decided by this Court on November 13, 1970), and is apropos to the facts of the instant case:
“Although that case did not involve actual partial taking of the subject property and is thus distinguishable on a basis of fact, the language relative to the assessment of special damages is highly persuasive in indicating the Supreme Court’s position on the matter of com-pensability :
‘The criterion for assessing the special damage suffered by a property owner because of the construction of a public project under eminent domain is whether that damage is not suffered by those in the general neighborhood —that is, whether the damage is peculiar to the individual who complains. In this case the effect of the construction is not limited to the neighborhood, or even to plaintiff and her three neighbors, and certainly not to the plaintiff alone. All the owners of such property, like the plaintiff here, must suffer the noise of traffic and must view less pleasant surroundings. In the metropolitan areas through which Interstate 10 passes, literally hundreds of houses which once had ingress and egress by direct routing of streets are now situated below elevated multi-lane highways and are reached by circuitous or more inconvenient routes. These are not in themselves special damages; they have not been and are not recoverable. Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616; Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885; Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572; Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218. Even when, as in the instant case, an actual diminution in market value of the property is found to exist because of these factors, this diminution is not compensable. Damages which cause discomfort, disturbance, inconvenience, and even sometimes financial loss as an ordinary and general consequence of public improvements are not compensable, and are considered damnum absque in-juria.’ ”
Application of the foregoing legal principles to the evidence convinces us that the finding of severance damages by the trial judge was manifestly erroneous. We reverse.
We are convinced that the testimony shows that the highest and best use of the subject property before the taking was residential. The houses were located in a residential neighborhood and, with the exception of the house occupied by the landowner’s sister, were all rented for years before the taking and were rented after the taking and at the same rent, with the exception of an increase of two dollars for one of the houses. Reference to the photographs offered in evidence shows that the hotises were substandard and were accurately characterized as such by the State’s wit *920 nesses. The conclusion of the State appraisers was that no severance damages were suffered inasmuch as three of the houses had been utilized as rent houses before and after the taking with no loss of revenues. As to the house which was lived in by the landowner’s sister rent free, the assumption that it did not lose its value as rental property is, in our opinion, both logical and reasonable.
Evidence that the property had been utilized as rental property for a considerable length of time and after the taking suffered no loss of revenue is, in our opinion, competent evidence to be considered in determining whether the market value of the property remaining has been diminished as a result of the partial taking. State, Through Department of Highways v. Mason, 229 So.2d 89 (La.App.1969).
The appraisers for the landowner gave an opinion judgment that the land and the improvements had been damaged by a diminution in value of 35 percent. The factors on which this opinion judgment as to the diminution in value is based are best summarized by reference to the testimony of Mr. James A. Stevenson as follows :
“A * * * I titled this ‘Favorable Factors Neighborhood Before the Taking’. (1) Area was adequately developed. (2) Area was resi7 dential and [in] overall character with emphasis on quiet secluded area with very little traffic. (3) Property in this area has always been in demand for family-type dwelling sites. (4) Traffic in the neighborhood was limited to extremely [sic] passenger cars. (5) Area was served by all municipal services, including gas, electricity, sewer, Sanitation Department, garbage collection. (6) Property had ideal setting for quiet, convenient family living. Adverse factors before the taking were none. Favorable factors after the taking were subject property was served by all municipal services, including electricity, gas, sewerage, sanitation, garbage collection. Adverse factors after the taking were overall character of the entire neighborhood was completely changed from quiet, private residential area to high speed expressway. The subject buildings and dwellings are now located approximately as listed below the number of feet from the highway, and I gave the various distances from the highway. The highest and best use before the taking was residential used for quiet living. After the taking, a consideration of the highest and best use of the land after the taking must be made in order to establish the value of said property. In order to estimate that amount severance damage resulted to the remaining property [sic]. It appears that the highest and best use after the taking would be as dwelling site for low-income family who cannot afford the luxury of a quiet secluded area and must risk the dangers created by a high speed bypass highway. That is the distinction I made in the before and after.” (Record, p. 100)
While we are satisfied that the testimony does not substantiate that the houses are now located on a “high speed highway,” assuming for the sake of argument that these factors had the effect of damaging the market value of the subject property to some extent, the alleged factors which supposedly contributed to the decrease in value of plaintiff’s property were not peculiar to the plaintiff but were damages that were suffered generally by the landowners in the area. Thus the damage factors relied upon by the landowner are noncompensa-ble for the reason that these factors were of a general consequence as a result of the public taking and considered damnum abs-que injuria.
We last consider the assignment of error by the State of the trial court’s *921 awarding expert witness fees in the sum of $300 each to the landowner’s appraisers, Hoyt M. Garrick and James A. Stevenson. The case of Sterkx v. Gravity Drainage District No. 1 of Rapides Parish, 214 So.2d 552 (La.App. 3rd Cir. 1968), states:
“Under LSA-R.S. 13:4521, public bodies are not liable for court costs except where expressly otherwise .provided. However, this provision has been held not to be applicable to expropriation proceedings when the taker does not tender the proper value of the property taken. Orleans Parish School Board v. Brown, 245 La. 792, 161 So.2d 274; State, Through Dept. of Highways v. Barineau, 225 La. 341, 72 So.2d 869; Westwego Canal & Terminal Co. v. Louisiana Terminal Co., 200 La. 990, 9 So.2d 389 (appropriation). See also LSA-R.S. 19:12.
“These decisions base their holding upon the constitutional guarantee that private property cannot be taken unless adequate compensation is paid therefor. Louisiana Constitution of 1921, Article 1, Section 2. The decisions note that the landowner’s constitutionally-directed just compensation would be diminished to the extent of the court costs unless the taking authority is held liable for same when it does not first tender or pay the value of the property.” (214 So.2d at 556 —Emphasis supplied)
The State made a tender of $215 for the land taken which was, by stipulation of counsel, increased $17; and, accordingly, there was no dispute as to the value of the land taken. The only controversy at issue was the amount of severance damages which for the reasons hereinabove described were denied, inasmuch as the landowner’s expert witnesses presented no competent evidence which would have been determinative of the landowner’s right to severance damages. Therefore, the judgment awarding expert witness fees to these witnesses is reversed.
For the above and foregoing reasons, the judgment of the trial court to the extent of the sum of $232, being the stipulated value of the land taken, is affirmed. The judgment insofar as it awards severance damages and expert witness fees is reversed and set aside. It is further ordered that there be judgment in favor of the State of Louisiana, Through the Department of Highways, and against the deefndant-appel-lee, Helen Seal Rivers, ordering the return of the excess award and interest thereon for severance damages plus five percent interest thereon from date of withdrawal by defendant from the registry of the court. All costs of court are to be borne by defendant-appellee, Helen Seal Rivers.
Reversed in part, amended and affirmed.