DIXON, Justice.
These consolidated cases arise out of expropriations for the construction of the new bypass route of Louisiana 21 through Bogalusa, Louisiana. In both cases, the property involved is marginal residential rental property. The Garrick property is a lot of approximately 100 foot frontage by approximately 215 feet deep, fronting on Vance Street. The property taken was a strip across the front 5.59 feet deep (a total of 549.22 square feet). There were no improvements located on the strip taken; the improvements on the remainder were a small rent house and an outhouse.
In the Rivers case a similar narrow strip was taken. One strip measured 4.5 feet deep across the entire frontage of 209.94 feet along Vance Street (now La. 21) and a strip 10 feet deep across the 90 foot frontage along Charlevoix Street. Four small frame houses were located on the Rivers tract — two facing La. 21 and two facing Charlevoix Street.
The land taken bore a stipulated value of thirteen cents a square foot. The contest in these cases concerns whether the defendants are entitled to severance damages. The State contends that no severance damages are due. Defendants maintain that the market value of the remaining parcels has been reduced because of noise, dirt, vibration, etc. resulting from the increased traffic after the construction of the bypass for La. 21. Defendants show that Vance Street was, before the construction of La. 21, a narrow, blacktop, dead end street, and that the neighborhood was a quiet, secluded neighborhood, desirable for residential use by persons of modest means.
*343 There was judgment in the trial court in the Garrick case for $135.00 for the value of the land taken and for $3,554.64 as severance damages to the remainder of the property, plus interest, costs and expert witness fees.
There was judgment in the Rivers case in the trial court for $232.00 for the land taken and $4,454.56 for severance damages to the remainder of the property, plus interest costs and expert witness fees. In each case the severance damages amounted to 35% of the value of the improvements and the remainder of the land.
/ In the Court of Appeal the judgment of the trial court on severance damages was reversed, and the awards to the defendants were accordingly reduced.
In each case, the Court of Appeal relied on rules enunciated in Reymond v. State Department of Highways, 255 La. 425, 231 So.2d 375. The Reymond case was construed as standing for the proposition that “loss of market value due to the taking ... is subject to the limitation that such damages must be peculiar to the subject property and not such as are suffered generally by other landowners in' the area.” State Department of Highways v. Garrick, La.App., 242 So.2d 278, 280.[1] See also State Department of Highways v. Rivers, La.App., 242 So.2d 916.
In awarding severance damages, the trial court agreed with defendants’ witnesses, who testified that the nature of the property involved “has changed from a property suitable for family living, especially *345 families with small children, to one no longer suitable for such purposes due to the increased noise, dust and generally hazardous nature of the construction, and the market value after the taking has thus been reduced.”
The Reymond case is not to be considered authority for the proposition relied on by the Court of Appeal. It was not an expropriation case. The plaintiff in Reymond sued the State and its contractor for damages resulting from the construction of an interstate highway. She complained of loss of easy access, impairment of view, isolation, noise, and structural damage caused by pile driving in the construction of the highway.
The principle mentioned in the Reymond case (quoted in footnote 1) — that special damages from public works must be peculiar to the complaining owner and not to the neighborhood generally in order to be compensable — might be perfectly appropriate in cases where there is no actual taking, no expropriation. There was no taking in the Reymond case. The rule is usually invoked in cases in which the owner of a tract of land, separate and independent from the tract suffering the expropriation, claims damages to his separate tract because of its proximity to the public work. Judge Hood' demonstrated a correct application of the rule in Gulf States Utilities Co. v. Comeaux, La.App., 182 So.2d 187, 189:
“We agree with defendant that a physical invasion of real property or of a real right is not indispensable to the infliction of damages within the meaning of the provisions of Article 1, Section 2, of the Louisiana Constitution. However, consequential damages to a separate and independent tract of land, no part of which is physically taken or invaded for public purposes, are not recoverable unless the owner sustains special damages, caused by the public works, which peculiarly affect his property only and which are not sustained by the public or neighborhood generally.”
To avoid a misapplication of the rule applied by the Court of Appeal in the cases before us, the cases cited in the quoted portion of the Reymond case should be examined.
Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616, was a suit for damages against the city for the construction of an overpass on Franklin Avenue. The trial judge found that the plaintiff’s property had suffered a total diminution in value of $10,000.00, one-fourth attributable to the overpass and three-fourths attributable to a diversion of traffic away from plaintiff’s automobile service station. Plaintiff recovered a judgment of $2,500.00 which this court affirmed.
Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885, involved a diversion of traffic from plain *347 tiff’s .business location due to a change in grade and a change of parking regulations. The plaintiff was denied recovery for these changes.
Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572, held that a diversion of traffic was an inconvenience suffered by the public generally and not compensable.
The Reymond, Patin, Thomas & Warner, Inc. and Rudolph Ramelli, Inc. cases [2] are not applicable to the cases before us. They did not involve damages to property resulting from a partial taking.
What is involved in the cases before us is specifically provided for in Art. 1, § 2 of the Louisiana Constitution of 1921: “Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” (Emphasis added). A frequently cited case explaining the historical development of the sources of this constitutional provision is McMahon v. St. Louis, A & T R. Co., 41 La.Ann. 827, 830, 6 So. 640, 641, where Justice Fenner said:[3]
“Prior to the constitution of 1879 the organic law of this state, like that of all the states of this Union, simply provided that ‘private property shall not be taken for public purposes without adequate compensation,’ etc. Under this rule, in absence of other special provisions, a taking of the property was a condition precedent to liability, and the measure of compensation due was the value of the property taken. Mere consequential damage to property, when the property itself was not taken, was not recoverable, and much less any damages resulting to individual owners, in the way of discomfort, inconvenience, loss of business, and the like. All such injuries, inasmuch as they resulted only from the exercise by another of his legal right, were damna absque injuria.
“The article 156 of the present constitution, in providing that ‘private property shall not be taken nor damaged for public purposes without adequate compensation,’ etc., only extended its protecting shield over one additional injury, and required compensation, not only for property taken, but also for property damaged. As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages the measure of compensation is *349 the diminution in the value of the property.
“There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been done to the property, i. e., to its value for rental and sale. Mere consequential injuries to the owners, arising from discomfort, disturbance, injury to business, and the like, remain, as they were before, damna absque injuria, — particular sacrifices which society has the right to inflict for the public good.”
Noise and vibration are not damna absque injuria. In 1908 this court followed the McMahon case in holding that the noise, smoke and vibrations of railway operations were elements of damage to be considered (even though there might not have been a taking). In Helmer v. Colorado Southern, N. O. & P. R. Co., 122 La. 141, 144, 47 So. 443, 444, the court said:
“We therefore answer that noise, smoke, vibrations, etc., incident to the operation, of defendant’s trains in front of plaintiff’s property are elements of damage to be considered, if the market value of plaintiffs’ property is thereby diminished, the amount of damages to be determined by the difference between the market value before the road was built and the market value afterwards.”
In modern times this court has not found it wise to depart from these principles. City of Shreveport v. Worley, 240 La. 117, 121 So.2d 506, involved much the same question as the one before us. In an expropriation suit, the owner claimed damages after the taking because his home would be 110 feet from the street instead of 115; the street was changed from a narrow blacktopped street to a “four-lane no-parking throughway.” The owner failed in his efforts to recover, not because he failed to prove that the value of his property diminished because of the new street. He sought to show that his property had not advanced in price like some others in the city. The court concluded that his evidence amounted to a showing that he would suffer a loss of anticipated profits sometime in the future, a loss too remote and speculative to be compensable.
Nor can the State find support in State Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89, which, it argues, is similar to the case before us. On the question of severance damages, this court agreed with the Court of Appeal’that the proof did not support the claim that the taking resulted in a loss of rental income.
Whether in a particular case damages shall be awarded after an expropriation depends on whether the property was actually damaged by the public work. The resolution of this question depends usually not on some sophisticated definition of “severance damages,” but upon the quality of the proof in the case. In the cases before *351 us the proof is opinion evidence by the appraisers. In the opinion of the State’s appraisers, the remainders were not damaged. Defendants’ appraisers were of the opposite opinion. The trial court found the opinions of defendants’ witnesses to be adequately supported. Their observations appeal to reason; they saw and counted traffic, heard the noise, felt the vibrations of the heavy trucks and noted the effect on the tenants; they described the change in the character of the neighborhood. The property is zoned for residential use, and thus the owners will not, in the foreseeable future, be able to profit from the traffic increase like owners of commercial •or industrial property might. The houses " formerly sat a short distance from a quiet 'dead end street. They are now from 10 to 45 feet from the edge of the busy four-lane concrete highway. These factors adequately support the opinions of defendants’ witnesses that the market value of the property has been reduced.
• For these reasons, the judgments of the Court of Appeal are reversed, and the judgments of the district court, in both cases, are reinstated, at plaintiff’s cost.
BARHAM, J., dissents and assigns written reasons. .

. Tlie portion of the Reymond opinion quoted by the Court of Appeal in both the Garriek and Rivers cases is:
“The criterion for assessing the special damage suffered by a property owner because of the construction of a public project under eminent domain is whether that damage is not suffered by those in the general neighborhood — that is, whether the damage is peculiar to the individual who complains. In this case the effect of the construction is not limited to the neighborhood, or even to plaintiff and her three neighbors, and certainly not to the plaintiff alone. All the owners of such property, like the plaintiff here, must suffer the noise of traffic and must view less pleasant surroundings. In the metropolitan areas through which Interstate 10 passes, literally hundreds of houses which once had ingress and egress by dire;t routing of streets are now situated below elevated multi-lane highways and are reached by circuitous or more inconvenient routes. These are not in themselves special damages; they have not been and are not recoverable. Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616; Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885; Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572; Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218. Even when, as in the instant case, an actual diminution in market value of the property is found to exist because of these factors, this diminution is not compensable. Damages which cause discomfort, disturbance, inconvenience, and even sometimes financial loss as an ordinary and general consequence of public improvements are not compensable, and are considered damnum absque injuria.” Reymond v. State Department of Highways, 255 La. 425, 448, 449, 231 So.2d 375, 383, 384.

. Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218, is similar and follows these cases.

. At the same term of the court, in an opinion written by the same justice, this court affirmed an award of damages to a property owner who claimed a diminution of value because of the construction of an elevated embankment in front of his property for a street railway. Griffin v. Shreveport & A. R. Co., 41 La. Ann. 808, 6 So. 624.