105 So.2d 219

Horace C. EFURD

v.

CITY OF SHREVEPORT.

No. 43955.

June 27, 1958.

Rehearing Denied Oct. 7, 1958.

William L. Murdock, John Gallagher, Shreveport, for appellant.

Dimick & Hamilton, Shreveport, for plaintiff-appellee.

SIMON, Justice.

The defendant, City of Shreveport, appealed from a judgment of the district court awarding to plaintiff, Horace C. Efurd [1], damages in the sum of $10,000 with legal interest from date of judicial demand, and for all costs [2] in his suit against the defendant to recover $22,500 because of the alleged damage to his property situated in the City of Shreveport as the result of the construction of a bridge or viaduct known as "Common Street Railroad Viaduct Project, Shreveport", commonly known as the Common Street Overpass.

Plaintiff answered the appeal praying that the judgment be amended by increasing the amount allowed him from $10,000 to $22,500, the amount originally prayed for, and that as thus amended the judgment be affirmed.

The subject property was acquired by the plaintiff in 1946 and measures 120 feet front on Common Street by a depth of approximately 150 feet, bounded by Common, Tally and Lake Streets and by a privately owned parcel of land. Lake Street is a dedicated street in which no street improvements were placed and in which are located some railroad tracks. The subject property enjoys a zoning classification as heavy industrial property, and could be used for almost any commercial purpose. Prior to and since the construction of the overpass the subject property has been leased for use as a private parking lot.

The overpass occupies the entire dedicated area of Common Street, starting approximately 40 or 50 feet from the intersection of Tally and Common Streets with a fill and at approximately 50 feet south of said starting point, and on southward, the overpass is supported on piers and steel girders. The width of the roadway is 40 feet, and sidewalks three feet wide are on each side of the bridge proper.

1. Horace C. Efurd died during the pendency of this suit in the trial court, and his surviving widow was made party-plaintiff in her capacity as testamentary executrix of his succession. Since this appeal has been taken she has completed her administration of said succession and has been discharged as executrix and placed in possession of the estate of her late husband, including the property involved in this suit, and on motion filed on her behalf she is made a party-appellee in these proceedings.

2. By stipulation of the parties-plaintiff and defendant it was agreed that the fees of the four real estate experts who testified upon the trial be fixed at the sum of $100 each, and that said fees be taxed as costs therein.

Its construction produced the effect of a concrete wall across the entire frontage of the subject property, rising from a height of three to four feet at the northerly edge to approximately 17 feet at the southerly edge of the property. All access to Common Street has been permanently blocked off and destroyed. The entrance to Tally Street has been substantially blocked by the overpass and by a concrete island constructed in its narrow intersection for drainage purposes.

The sole issue is whether the subject property has suffered any diminution in market value as a result of the construction of the overpass.

Defendant contends that the property did not suffer any diminution in market value but only suffered consequential injury arising from discomfort, inconvenience, traffic diversion, loss of corner influence and street parking, which conditions, under our well settled law, would fall in the realm of damnum absque injuria. Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885; Rudolph Ramelli, Inc., v. City of New Orleans, 233 La. 291, 96 So.2d 572; Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218.

On the other hand, the plaintiff contends that the property has suffered a substantial diminution in rental and sale value by reason of being entirely deprived of its street frontage, its right of access to the street, its loss of ingress and egress, its being isolated from the street upon which it formerly fronted and deprived of the use thereof, which conditions create a ground for legal redress.

■ It is well settled that when private property is damaged for public purposes, the measure of compensation is the diminution in the market value of the property damaged. Thomas & Warner v. City of New Orleans, supra.

■ In an effort to establish the alleged fair market value of and diminution thereof plaintiff offered the testimony of two realtors, Lawrence L. May and A. W. Sour, as expert appraisers, as well as the testimony of V. A. Grimes, owner and operator of approximately 65%–75% of the open air downtown parking lots in Shreveport. Defendant offered the testimony of two realtors, Marvin Hurlbut and Walter Hunter, as expert appraisers, as well as that of Louis E. Roeger, an engineer connected with the firm of consulting engineers who designed the overpass herein, who testified that on the basis of his experience in railroad engineering, the overpass did not block out a possible spur track into plaintiff's property which might be used in the event this property should be used for commercial or industrial purposes.

The record discloses that prior to the construction of the overpass the subject property had been leased to the Dumont Company, Inc., at a rental of $225 per month

for use as a private parking lot in connection with the said lessee's operation of a large apartment house near by. This lease was cancelled immediately prior to the beginning of construction operation on the overpass, and for a period of one year the lot was rented to the Austin Bridge Company for storage of their heavy equipment. After the construction of the overpass the lot was again leased to the owner of the Town House Apartment Building, but this time at a lower rental. This second lease contained two renewal options in favor of the lessee.

The property is situated in a somewhat quiet and inactive neighborhood and therefore there were very few recent comparative sales by which the market value could be determined.

Mr. May, a realtor of thirty years' experience, testified as to the potential commercial uses of the property prior to the blocking off of its Common Street ingress and egress, and upon attempting to consider the usual methods employed to estimate a fair market value of property he testified that the value of the subject property is best indicated by its lease, which capitalized at 6% showed a value of $45,000, and that upon a percentage basis the property was damaged from 50%–75% of its value. Mr. Sour appraised the property before the construction of the overpass at $45,000, and opined that it was damaged to the extent of at least 50% by reason of the construction

of the overpass. Mr. May and Mr. Sour make independent appraisals.

Mr. Grimes testified that the subject property would not be desirable as a public outdoor parking lot for the reason that its front entrance is cut off by the overpass; that the present rental value of the property as a public parking lot would be about $50 per month, whereas prior to the construction of the overpass its rental value as a parking lot would have been about $100 a month, thus showing a 50% decrease in rental value.

In their joint appraisals Messrs. Hurlbut and Hunter estimated the value of the property prior to as well as following the construction of the overpass at $27,000 without any resulting diminution as to market value. Mr. Hurlbut testified as to sales of other properties as nearly comparable as were available. In many instances, due to certain circumstances, the said sales were rather meaningless insofar as establishing the market value of the subject property. They took into consideration its site, the terms of the lease covering it, its past use; and mainly considering it from the standpoint of highest and best use, they concluded that the property had suffered no damage in value by virtue of the construction of the overpass, and that its highest and best use is for a private parking lot.

■ Admittedly the best method of arriving at the market value of property is

the use of recent sales of comparable property. City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; State v. Dowling, 205 La. 1061, 18 So.2d 616; and City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36. In view of the unavailability of said method, the income method based on the rental value of the property was a factor which was properly taken into consideration to establish the fair market value as well as other surrounding factors.

The trial judge concluded that the fair market value of the property was $30,000. On the basis of the record, including the photographs showing the complete blocking of access to the public street in front of plaintiff's property and the destruction or elimination of ingress and egress thereto and therefrom, the trial judge found that the elements of damage in this case do not fall within the doctrine of damnum absque injuria, and he concluded that plaintiff's property was damaged to the extent of one-third of its value and compensable in the amount of $10,000. We are not disposed to disturb the award.

Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.

FOURNET, C. J., absent.

105 So.2d 222.