519 So.2d 279 (1988)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Harry C. STUMPF, et al.
No. 87-CA-528.
Court of Appeal of Louisiana, Fifth Circuit.
January 11, 1988.
Writ Denied March 11, 1988.
*280 Deutsch, Kerrigan & Stiles, Ralph L. Kaskell, Jr., Nancy J. Marshall, of counsel, New Orleans, for Harry C. Stumpf, Jack Stumpf, Nat B. Knight and George Relle, defendants/appellants-appellees.
Frederick J. Fuselier, Sr. Asst. Gen. Counsel, Louisiana Dept. of Transp. and Development, Office of General Counsel, Baton Rouge, for plaintiff/appellee-appellant.
Before CHEHARDY, C.J., and GRISBAUM and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
This is an expropriation suit instituted by the State of Louisiana through the Department of Transportation and Development (DOTD) against John Stumpf, et al. under the provisions of LSA-R.S. 48:441 et seq. The State deposited the sum of $1,045,407 in the registry of the court for the taking and the damages. The trial court granted judgment for $1,209,699. The landowners appealed and DOTD cross-appealed. The issues raised on appeal relate to the value of the property taken.
The property taken consisted of a .965-acre parcel located at the corner of the Westbank Expressway and Terry Parkway in Jefferson Parish. This parcel was part of a larger, unimproved commercial tract which measured 7.145 acres and had a frontage of 962.55 feet on Terry Parkway prior to the taking and 283.77 feet on the Westbank Expressway. The part taken consists of a narrow strip along Terry *281 Parkway on which the State will place a down-ramp of the New Greater New Orleans Mississippi River Bridge.
Access to the remainder property subsequent to the taking is limited to availability under the down-ramp. Access to the remainder from the Westbank Expressway is not impaired by the taking. The third side of this generally triangular remainder tract is adjacent to the Oakwood Regional Shopping Center.
DOTD hired four appraisers to assess the value of the property taken and the damages to the remainder property. Peter Talluto and Jack Evans submitted appraisals dated August and September 1981 respectively. When their reports with appraisals of approximately $1,700,000 were submitted, they were rejected and DOTD employed two additional appraisers, Edward Deano and Irvington Eppling. DOTD used the highest of the second appraisals, which was Eppling's, in estimating the landowners' loss and placing its deposit in the registry of the court.
Talluto or Evans were not called by the DOTD to testify nor were their appraisals used by the DOTD in any way. DOTD attempted to limit the landowners' discovery with respect to these experts. Such attempts resulted in the Louisiana Supreme Court allowing landowners to depose the experts and to subpoena them to appear as witnesses for landowners at trial.
The landowners contend the trial court erred in not finding that the State violated their constitutional and statutory rights to just compensation by relying on Eppling's appraisal and that the State's actions with regard to the first two appraisers amount to an admission against its interest.
Property owners are constitutionally entitled to just compensation for property taken. U.S.C.A. Const.Amend. 5; LSA-Const. Art. 1, § 4. The legislative aim of the statutory rules governing "quick takings" for highway purposes, LSA-R.S. 48:441-460, is to implement Article 1, § 4 of the 1974 Louisiana Constitution by assuring that each owner is justly compensated to the full extent of his loss for property taken or damaged. State Dept. of Highways v. Bitterwolf, 415 So.2d 196 (La. 1982). This purpose is expressly stated by the statute.
LSA-R.S. 48:443 requires that two or more right-of-way appraisers or agents be selected to estimate the value of the expropriated property. An itemized statement of the amount of money estimated to be the full extent of the owners' loss must be annexed to the petition for expropriation. LSA-R.S. 48:422. Upon the deposit of the amount of the estimate in the registry of the court, title to the property and the property rights specified in the petition shall vest in the department and the right to just and adequate compensation shall vest in the landowners. LSA-R.S. 48:445.
The concept of compensation to the full extent of the landowners' loss requires not only that a landowner be paid no less than that amount, but also that he be paid no more than that amount. State Dept. of Highways v. Bitterwolf, supra. In light of this constitutional and statutory duty placed on DOTD, their reliance on one of four expert appraisers cannot be viewed as a derogation of defendants' constitutional or statutory rights. Further, it cannot be viewed as an admission against interest.
The expropriation occurred on April 2, 1982. On December 29, 1982, the remainder property was purchased by Jack Stumpf and Associates, a company largely owned by John Stumpf, one of the original landowners, for the sum of $1,500,000. Jack Stumpf and Associates later sold the property to three purchasers for a total of $1,500,000. Two parts were sold to Shell and Denny's for $12 per square foot and $7.28 per square foot respectively. The rest was sold to La Quinta Westbank Joint Venture, a company in which John Stumpf owns an interest, for $720,000 ($3.96 per square foot).
The landowners argue the trial court erred in finding that the sales of the remainder land were not free market sales.
The trial court in its reasons for judgment stated,
*282 "[T]he evidence is clear that sales by the defendant owners to LaQuinta-Westbank properties are `sweetheart' sales. The Stumpfs have a large interest in LaQuinta-Westbank properties and that coupled with the fact that low interest industrial bonds for that development have a price ceiling gives the court good reason to believe that these low sales prices are not the true market sales price on which the appraisers or the court can rely in setting the severance damages."
We find the trial court's position is well-supported by the evidence presented, including testimony indicating that $3.96 per square foot is below fair market value. We, therefore, find no manifest error in this conclusion.
At trial, the parties presented substantially different evidence regarding the value of the land taken and the damage to the remainder.
The errors assigned with regard to the adequacy of awards for the taking and the severance damages involve many of the same legal principles, particularly those dealing with the credibility and weight of expert testimony, and the discretion of the trial court in its fact finding. We will, therefore, set forth the general principles regarding the weight and credibility to be given to the experts' testimony and the discretion of the trial court in making its determination of facts.
In expropriation proceedings, much discretion is granted to the trier of fact. The trial court's factual determinations as to value of property and severance damages, and his evaluation of and weight given to testimony of expert witnesses, will not be disturbed on review in the absence of manifest error. State, Dept. of Transp. v. Van Willett, 386 So.2d 1023 (La.App. 3 Cir.1980); State, etc. v. Estate of Aertker, 404 So.2d 316 (La.App. 3 Cir.1981).
Several appraisers testified as to the value of the land. All qualified and were recognized as expert appraisers. All gave careful and detailed explanations of their conclusions.
Jean Felts testified on behalf of the landowners. In her opinion the highest and best use was for satellite retail before the taking and for a motel or motor inn after the taking. She assumed no access to the remainder from Terry Parkway, but testified that if access were possible damages would be somewhat less. She assessed the just compensation for the taking at $1,788,706.
Robert Merrick also testified for the landowners. In his opinion the highest and best use prior to the taking was a major commercial development. His estimate of just compensation was $462,000 for the land taken and $1,463,000 for severance. He, too, anticipated no access to the remainder from Terry Parkway subsequent to the taking, but testified that even if access underneath the down-ramp were available his opinion would be unchanged, as the property would be no more marketable.
The landowners also called as witnesses Peter Talluto and Jack Evans, the first two appraisers hired by DOTD. Peter Talluto valued the property prior to the taking at $2,800,000. He valued the remainder after the taking at $1,076,803. He stated that the taking will result in having access to the remainder only from the Westbank Expressway and, even if access under the structure is allowed, it is questionable that access roads, turn-off roads, etc., could be negotiated onto Terry Parkway. He, therefore, was of the opinion that the after-status depends primarily upon the access from the Westbank Expressway.
Jack E. Evans, Jr., testified that access to Terry Parkway is diminished by 94%. He valued the expropriated property at $384,487 and assessed $1,319,084 as severance to the remainder property. Therefore his just compensation figure came to $1,703,571.
The State's expert, Irvington J. Eppling, disagreed with these conclusions. In his opinion, the remainder property will have access underneath the ramp structure. He valued the entire parcel at $9.75 per square foot prior to the taking and discussed five comparables in support of this conclusion.
*283 He opined that the highest and best use for the property before the taking was a planned unit development, possibly a mixture of office buildings or shopping center uses. He estimated the value of the remainder after the expropriation to be $7.50 per square foot. He, therefore, assessed the value of the part taken at $409,699 and damages to the remainder at $637,202. His total estimate of just compensation was $1,046,901.
In the reasons for judgment, the trial judge stated that the "original appraisal of Mr. Eppling seems to be most correct of all the other appraisers." The court adopted Eppling's estimated value of the land taken as $409,699 and awarded $800,000 in severance damages. The latter is largely based on the loss of access to the remainder property.
Both the landowners and the State contend the award was in error.
DOTD contends the "Court erred in awarding the amount of $800,000 as severance damages rather than the $637,202 found by the expert on which it relied in reaching its conclusions."
We reject this argument, as the trial court is not bound to accept an expert's appraisal in toto. State, Dept. of Transp. v. Van Willett, supra.
The landowners contend the court erred in not relying on the appraisals of Talluto, Evans, Felts and Merrick, and in awarding too little compensation for the taking and the damage to the remainder.
Expert opinions as to value are not binding on the trier of fact. They are not ordinarily conclusive and are generally regarded as advisory in character. The purpose of such opinion is to assist the court in its effort to determine the ultimate facts. The weight given to testimony is determined by the professional qualifications and experience of the expert, the facts and studies upon which the opinions are based and the familiarity with the location. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972).
Weight must be given to all expert testimony which is well grounded in sound reasoning. State, Dept. of Transp. v. Van Willett, supra.
Where the experts disagree as to the value of the land taken, the trial court has much discretion in evaluating and determining the weight to be given to each expert. State, etc. v. Estate of Aertker, supra.
After reviewing the testimony of the experts and other evidence, we find no abuse of discretion in the trial court's conclusion that Eppling's testimony was entitled to greater weight than that of the other experts. We also find no manifest error in the trial court's factual findings as to accessibility and highest and best use. Accordingly, we find no error in the trial court's award for the taking or the damage to the remainder tract.
The trial court awarded expert fees for Evans and Talluto in the amount of $150 each and for Felts and Derbes in the amount of $750 each.
The defendants complain that the expert fees fixed on their behalf should be increased given the required preparation and the appearances in court and at depositions. Further, they contend the trial court erred in not fixing an expert witness fee for Robert Merrick.
It is well settled that the trial judge has much discretion in setting expert witness fees.
Our review of the record does not reveal manifest error in the awards. Therefore, we affirm the awards. It does, however, appear that the trial court did erroneously fail to set an expert fee for Robert Merrick. We, therefore, set his fee at $750.
For the above and foregoing reasons, the judgment of the trial court is amended to award Robert W. Merrick an expert witness fee of $750 at the expense of the Department of Transportation and Development. In all other respects the judgment of the trial court is affirmed. The *284 costs of this appeal are taxed equally between the parties.
AMENDED AND AFFIRMED.