529 So.2d 487 (1988)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellant,
v.
SEMP RUSS PLANTATIONS, Defendant-Appellee.
No. 87-586.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*488 Paul Ray Dry, Baton Rouge, for plaintiff-appellant.
Wiener, Weiss, Madison & Howell, Shreveport, Watson, Murchison, Crews, Arthur & Corkern, Daniel T. Murchison, Natchitoches, for defendant-appellee.
Before DOMENGEAUX, STOKER and KING, JJ.
STOKER, Judge.
This is an expropriation case. On December 31, 1984 the State of Louisiana, Department of Transportation & Development (State), brought this suit against Semp Russ Plantations (Semp Russ) to expropriate 36.658 acres from about 1,715.33 acres of unimproved timberland northwest of Natchitoches.
Semp Russ is a partnership which owns and operates a timber farming business. Semp Russ acquired the subject property from the Russ family in 1979. It is comprised of four contiguous tracts which are allegedly operated as one unit of timberland. Tract A, the westernmost tract, contains 480 acres. Tract B, the middle tract, contains 1,235.33 acres. Tract C, to the east, contains 80 acres. Tract D, in the southeast, also contains 80 acres. See Appendix I.
The State expropriated 6.678 acres from the northeast corner of Tract A and 29.9 acres through the middle of Tract B for the purpose of building the I-49 highway. The State deposited $64,234 in the registry of the court as its estimate of just compensation for the parcels taken. From the State's point of view this appeal involves a separate Tract C consisting of 80 acres, none of which was actually taken.
Semp Russ filed an answer and reconventional demand alleging the fair market value of the property expropriated and severance damages to be $399,234, less a credit for the $64,234 deposited, plus 25% attorney's fees and interest.
At trial, both sides presented expert witnesses who testified as to just compensation and severance damages. The jury awarded a total compensation of $276,326.41, subject to a credit of $64,234, for the deposit, plus interest. The trial judge awarded $53,023.10 for attorney's fees and $28,862.30 for the experts' appraisal fees.
The State appeals this judgment and designates as its sole assignment of error the following:
The jury and trial judge erred in awarding severance damages to property separate and independent from that property *489 which was physically taken where the landowner did not prove unity of use.
This assignment of error by the State applies only to Tract C and does not involve the awards relative to Tracts A and B.
Semp Russ also appeals the judgment and designates as its sole assignment of error the following:
The jury erred in determining the total just compensation to be awarded as $276,326.41 and said amount should be increased to $320,180.44, with a proportionate increase in the 25% attorney's fees.
This assignment of error by the landowner applies to all three of the tracts for which an award was made.

APPRAISALS AND VERDICT
Semp Russ's expert witnesses testified to compensation as follows:

 I.
 RANDY B. LACAZE (real property appraisal expert):
"Tract
"A"
 Market Value of Part Taken $ 11,429.67
 Severance Damage -0-
 ___________
 Total Just Compensation, Tract "A" $ 11,429.67
Tract
"B"
 Market Value of Part Taken $ 52,812.25
 Severance Damage 224,576.50
 ___________
 Total Just Compensation, Tract "B" $277,388.75
Tract
"C"
 Market Value of Part Taken $ -0-
 Severance Damage 31,362.02
 ___________
 Total Just Compensation, Tract "C" $ 31,362.02"
 II.
 RONALD W. PREWITT (forestry expert):
 "It is the opinion of Mitchell and Prewitt that
 the construction of I-49 has diminished the value
 of the timber on the West Remainder [Tract B] a
 total of 30% of the timber value prior to taking or:
 $575,911.49 × 30% = $172,773.45 and has diminished
 the value of the timber on the 80 Acre Tract
 [Tract C] a total of 50% of the timber value prior
 to taking or: $26,724.04 × 50% = $13,362.02 for
 a total timber dimunition value of $186,134.47."
 III.
 JAMES A. YOUNG (real property appraisal expert):
 "Just Compensation Subject Tract A $ 10,761
 Divided as: Part Taken $ 10,761
 Severance Damages -0-
 Just Compensation Subject Tract B 244,097
 Divided as: Part Taken $ 52,062
 Severance Damages 192,035
 Just Compensation Subject Tract C 30,612
 ________
 Divided as: Part Taken -0-
 Severance Damages $ 30,612"

The State's expert witnesses stated that they were not assigned to assess whether any compensation is due for Tract C, but did testify to compensation for Tracts A and B as follows:

*490
 I.
 JOHN N. GIRLINGHOUSE (real property appraisal expert):
 "Estimated Value of Improvements Taken: $ 906
 Estimated Value of All Land Taken: $ 64,242
 Severance Damage to Remainder: $ 91,575
 Special Benefits to the Owner: $ -0-
 Total Value All Improvements and Land Taken, and Severance
 Damage to Remainder: $156,727"
 (Tracts A & B only)
 II.
 H. LOREN WILLETT (real property appraisal expert):
 "Estimated Value of All Land Taken: $ 25,483
 Estimated Value of Improvements Taken: $ 27,489
 Severance Damage to Remainder: $ 52,044
 Special Benefits to the Owner: $ None
 Total Value All Improvements and Land Taken, and Severance
 Damage to Remainder $105,016
 Additional Compensation Reflecting Full Extent of Owner's
 Loss $ -0-
 Total Compensation and Recommended Offer $105,016"
 (Tracts A & B only)

The jury awarded the following itemized damages:

 "(1) We find the total value (land & timber) of the 6.678 $ 11,804.49
 acres (Tract A, Parcel 14-2) taken by the Department
 of Highways to be
 (2) We find the total value (land & timber) of the 29.98 $ 53,343.51
 acres (Tract B, Parcels 11-1, 11-1-S-1 and 11-1-S-2)
 taken by the Department of Highways to be
 (3) We find that the total amount of the severance damages $180,191.40
 to the remaining 520.436 acres of Tract B to be
 (4) We find the total amount of the severance damages $ 30,987.01
 to the remaining 80.00 acres of Tract C to be ___________
 * * *
 (5) Accordingly, we find that the TOTAL JUST COMPENSATION $276,326.41"
 to be awarded to the defendant to be
 a total of

IMPAIRMENT OF INGRESS AND EGRESS
The State contends that Semp Russ is not entitled to damages for Tract C because unity of use between Tract C and Tracts A or B has not been proven. However, it is not necessary that Semp Russ prove unity of use to recover compensable damages to Tract C. A property owner may recover damages if his ingress and egress are substantially impaired by the expropriation, although no portion of the owner's property is taken. Efurd v. City of Shreveport, 235 La. 555, 105 So.2d 219 (1958); Cucurullo v. City of New Orleans, 229 La. 463, 86 So.2d 103 (1956); Hebert v. State, Department of Highways, 238 So.2d 372 (La.App.3d Cir.), writ denied, 256 La. 911, 240 So.2d 373 (1970). Although Semp Russ may be able to obtain access for its logging trucks through adjoining neighbors' properties under LSA-C.C. art. 699, the necessity of securing an agreement or of litigation would affect the market price of the land, as testified to by Semp Russ's experts. See State, through Dept. of Hwys. v. A. Wilbert's Sons Lumber and Shingle Co., 346 So.2d 842 (La.App. 1st Cir.), writ denied, 349 So.2d 1267, 1271 (La. 1977) and State, Dept. of Transp. & Dev. v. Taylor, 461 So.2d 1282 (La.App.3d Cir. 1985), writ denied, 464 So.2d 1382, 1383 (La.1985). Therefore, Semp Russ needed only to show substantial impairment of ingress and egress, not unity of use, to prove compensable consequential damages to Tract C.
Prior to the expropriation, access to Tract C was by means of a dirt field road through the neighboring Messenger and *491 Bowden properties, pursuant to a "handshake agreement," which joined an all-weather gravel parish road, the King's Hill Road. The I-49 highway has eliminated access to the King's Hill Road by crossing the dirt field road at a point before it joined the gravel parish road, causing Tract C to be landlocked. See Appendix II. Although Tract C was landlocked prior to construction of I-49, since a conventional or legal servitude of passage was never established on the Messenger and Bowden properties, on the existing field road, a servitude will now have to be established in a different location, where there is no existing road. This is a compensable consequential damage because the necessity of securing this agreement or litigation has affected the market value of Tract C. State, through Dept. of Hwys. v. A. Wilbert's Sons Lumber and Shingle Co., supra.
Young and LaCaze testified that although the highest and best use for Tract C prior to the expropriation was its continued use as timberland, the elimination of access after the expropriation made hunting and recreation the highest and best use for Tract C. Prewitt, a forestry expert, testified as to the effect of I-49 on access to Tracts B and C as follows:
"If legal access is not restored to the West Remainder [Tract B] and the 80 Acre Tract in Sec. 17-10-9 [Tract C], the construction of I-49 will have a tremendous adverse effect on the value of the timber on these tracts.
"The salability of the timber on these tracts will be greatly reduced in that a number of third-party landowners must give access consent on each timber sale. Third party owners, rarely if ever, allow logging activities in wet weather months, which results in major reduction in the value of the timber on this type of access-problem tracts.
"There are no established woods roads systems to either of these tracts that has not been severed by I-49. Any type of road construction that a logger must do results in a lesser stumpage value that a landowner gets for his timber."
Edmond J. Giering, III, an expert in the field of engineering, testified concerning the cost of building an all-weather access road to Tract C along an extension of the northerly route to Tract B, which he deemed to be the most economical of the three possible routes studied for Tract C. This extension would involve a total of 4.02 additional acres in right of way to get to Tract C, and the cost would be:

 "Road Costs $100,402.00
 Right of Way: 4.02 acres $ $2,000.00 per
 acre 8,040.00
 Attorney Fees & Costs 2,500.00
 Appraisal Fees 800.00
 ___________
 TOTAL ROAD COSTS............................................$111,742.00"

Although the prior access road to Tract C was not an all-weather road, an all-weather road may now be necessary, at least to cross adjoining properties since, as noted by Mr. Prewitt, logging trucks can cause extensive road damage in wet weather. Since the cost of building an all-weather access road is considerably in excess of the estimated value of Tract C, Young and LaCaze testified that the more economically feasible approach is to compensate defendant for the loss in Tract C's value caused by the elimination of access.
Randy LaCaze testified that the consequential damages to Tract C (based on 50% less in market value estimated through comparable sales of landlocked properties) are as follows:
"TRACT "C": As discussed earlier, Tract "C" has a primary highest and best use in the area of recreation and hunting with a secondary utilization for the growth of hardwood and pine timber on approximately 35 acres. This tract had no road frontage and had access by a field road across abutting ownerships from the Kinghill Road prior to the taking. In this regard, the data cited reflecting limited access or land-locked tracts would be more applicable to Tract "C". The limited access or rear land sales cited reflected values as low $367.00 per acre through a high side of *492 $734.00 per acre, depending on the relationship of the property to its access. It is this appraiser's judgment that the subject Tract "C" would have an overall market value prior to the taking of $475.00 per acre. This does not take into consideration the value of the merchantable timber on the tract. This is established by the consultant forester, Mr. Ron Prewitt, based on his cruise of the subject tract. Mr. Prewitt's estimate of the total timber value on the entire tract is $26,724.04. This is added to the land value for an indication of the value of the whole prior to the taking.

VALUE OF THE WHOLE PARCEL
 80.0 acres $ $475.00 per acre.............. $38,000.00
 Timber Value............................... 26,724.04
 __________
 TOTAL VALUE OF THE WHOLE PARCEL, TRACT "C" $64,724.04

The cost of restoring access of Parcel # C-1 is in excess of the total fee value of Parcel # C-1 prior to the taking. Therefore, this would be considered an enhancement of defendant's position.
As a comparison to the prior calculations, this appraiser analyzed severance to Parcel # C-1 considering that access is not restored. The same valuation prior to the taking would apply. As based on this appraiser's earlier analogy, the value of Parcel # C-1 after the taking with no restoration of access is judged to be $250.00 per acre. This is adequately demonstrated by market data reflecting limited access or rear land sales, as well as by the analysis of the land-locked parcel discussed herein. With no restoration of access, defendant would be virtually at the mercy of the adjoining ownership as to a potential purchaser. The diminution in the timber on Parcel # C-1 with no access restored is established by Mr. Ron Prewitt. The value of the timber after the taking with no access restored is $13,362.02.

Parcel # C-1 After Taking
 80.0 acres $ $250.00 per acre............ $20,000.00
 Timber Value............................. 13,362.02
 __________
 Total Value Parcel # C-1 After Taking....................... 33,362.02
 __________
 Severance Damage to Parcel # C-1 Without Access Restored.... $31,362.02

As based on these calculations, it is more economical to compensate for the diminution in value to the land and timber without restoration of access. This reflects a total severance to Parcel # C-1 of $31,362.02."
James Young testified to consequential damages for Tract C (based on a 50% loss in market value estimated through consideration that Tract C was landlocked prior to the expropriation) as follows:
"VALUATION OF TRACT C BEFORE THE TAKING
Subject Tract C before the taking is a rear land location but with access. In our opinion, it is an inferior location to both subject properties A and B, and because of the influence of Halls and Berry Brakes, the per acre value should be substantially reduced. No truly comparable sales were found for this property. Based on our research, it is our opinion, that this property should be valued based on the 35 acre high land at $600 per acre and the 45 acre balance of the property at $300 per acre. This would indicate a value of $34,500 for the tract or, $431.25 per acre. As with subject tracts A and B, Mr. Ron Prewitt has provided a timber valuation as of the date of taking at $26,724. The estimate of value for Tract C before the taking is as follows:

 80 Acres $ $431.25 $34,500
 Timber Value 26,724
 _______
 Total Estimate of Market Value Before the Taking $61,224

"ESTIMATE OF MARKET VALUE AFTER THE TAKING, SUBJECT TRACT C
As described in the Site Data section of this report, subject Tract C is landlocked after the taking. It must therefore be *493 analyzed under the same basis as the southerly portion to Tract B above, i.e., under the cost to cure basis and based on its sale to an investor or adjoining property owner. In analyzing the property under the cost to cure basis, Mr. Giering has indicated the most reasonable cost to acquire direct access to subject Tract C to be in excess of $100,000, via the north route as an extension easterly from subject Tract B. This cost to cure is in excess of the property value and would, therefore, not be prudent. Therefore, the property is valued similar to the southerly portion of Tract B as described earlier based on 50 percent of its market value prior to the taking. In our opinion, this should also encompass the merchantable timber as it would suffer the same locational characteristics. Subject Tract C is therefore valued at 50 percent of its value before the taking as follows:

 Land $34,500 × .5 $17,250
 Timber $26,724 × .5 13,362
 _______
 Estimate of Market Value After the Taking, Subject Tract C $30,612"

Testimony was offered as to the possible willingness of neighboring property owners to grant a right of passage to Semp Russ and the possibility that litigation would be involved. Geiring, LaCaze and Young all considered the cost of rights of way in their estimates and the amount of damage which logging trucks can cause in wet weather. The conclusion of both LaCaze and Young is that, inasmuch as a road must be constructed because there is apparently none existing which can be used as a right of way, compensation for loss of value is the more economically feasible method of compensation.
Apparently, the jury agreed with the need for compensation for Tract C and the feasibility of compensating for loss of value, rather than the cost of providing access. The action of the jury in making this award and the amount thereof, $30,987.01, is not manifestly erroneous and will not be disturbed.

TOTAL JUST COMPENSATION
Defendant contends that the jury and trial judge erred in awarding a total compensation of $276,326.41 instead of $320,180.44, the highest estimate presented. However, the evaluation of and weight given to the testimony of expert witnesses by the trial court as the factual basis for its conclusions will not be disturbed absent a showing of manifest error. State of Louisiana, Dept. of Transp. & Dev. v. Bernard, 524 So.2d 808 (La.App. 3d Cir. 1988); State, through Dept. of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir. 1979). Apparently, the testimony of Semp Russ's expert witnesses was given greater credibility in determining the amounts awarded than the testimony of the State's expert witnesses, even though the jury did not award the highest amounts testified to. There is no manifest error in the award of $276,326.41 for total just compensation.
Defendant complains particularly of the jury's award of severance damages for Tract B of $180,191.40. Randy LaCaze testified to severance damages for Tract B of $224,576.50 (using the cost to cure approach which restores access, with a road costs estimate of $159,522). James Young testified to severance damages for Tract B of $192,035 (using the cost to cure approach with a road costs estimate of $152,847). H. Loren Willett testified to severance damages for Tract B of $52,044 (using the market data approach with no access restoration). John Girlinghouse testified to severance damages for Tracts A and B together of $91,579 (using the market data approach with no access restoration).
In State, through Dept. of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972), the court stated:
"Justice does not require a court to accept as an absolute verity the opinion of the expert witness of a party simply because it involves a value of property lower than that of another expert tendered by the same party. State, through Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964).

*494 "Instead, the effect to be given to opinion testimony is governed by the weight the trier of fact accords to that testimony. The weight testimony is entitled to receive is determined by the professional qualifications and experience of the expert, the facts and studies upon which his opinion is based and, in case of land appraisals, his familiarity with the locality. La. Power and Light Co. v. Dixon, 201 So.2d 346 (La.App.1967). In all cases the possible bias of the witness in favor of the side for whom he testifies and the witness' character and credibility bear upon the weight of the testimony.
"These are all matters for the trier of fact. And when, as in this case, testimony of the witnesses is contradictory, the finding of the trier of fact will not be overturned unless manifest error appears in the record."
That portion of Tract B which is the subject of defendant's complaint concerning severance damages contains 520.436 acres and consists of the southern portion of the remainder of Tract B. The total jury award being $180,191.40, the per acre severance damage was fixed by the jury at $346.23. The per acre assessment of severance damages by defendant's appraisers were $431.51 (LaCaze) and $368.99 (Young). Considering the jury's award against the appraisers' figures, the jury's award does not appear unreasonable or unrealistic. Given the conflicts between all of the experts' estimates, we cannot conclude that the jury's severance damages award for Tract B, which fell just below the two highest estimates, was an abuse of discretion or manifestly erroneous. See State, through Dept. of Highways v. Devall, 405 So.2d 1173 (La.App. 1st Cir.1981).

CONCLUSION
For the foregoing reasons the judgment of the trial court is affirmed. The costs of this appeal are assessed equally to plaintiff-appellant, State of Louisiana, Department of Transportation and Development, and defendant, Semp Russ Plantations.
AFFIRMED.
*495 
*496