BOWES, Judge.
The State, Department of Transportation and Development appeals a decision of the trial court finding that the denial of an access permit constituted a “taking” and awarding damages to plaintiffs. We affirm in part and remand.

*296
FACTS

This appeal involves property in which the plaintiffs intended to create a subdivision. The subdivision plan began in the early 1970⅛.
On August 10, 1973, V.I.P. Corporation purchased a tract of land consisting of approximately 109 acres from Bar None, Inc. for $400,000.00. V.I.P. intended to develop a subdivision on the property.
On December 17, 1973, V.I.P. dedicated the streets and greenways. St. Charles Parish accepted the dedication of the streets and greenways and this dedication remains in effect today. This dedicated area comprised approximately 30 acres out of the 109 acres. This left approximately 80 acres, which was subdivided into lots to be sold.
Subsequent to this dedication and the laying out of lots on the subdivision plat, V.I.P. began to sell some of the lots. Some of the lots were sold by V.I.P. to various persons, including some persons who were V.I.P. shareholders. At this time, and to the date of trial, no construction of the subdivision infrastructure had begun.
In 1975 V.I.P. sold most of the remaining lots which had not been previously sold to St. Charles Land & Development Company. The stock of St. Charles Land & Development Company was later transferred to Huey Rivet and his company Rivet Dragline & Marsh Buggy Company, Inc. (St. Charles Land & Development Company and Rivet Dragline & Marsh Buggy Company, Inc. will hereinafter be referred to as “Rivet”).
Subsequently, Rivet acquired the majority of the lots.
In the latter part of 1976 or the first part of 1977, Huey Rivet began doing work on the land. He did some restoration work on the ring levees which had originally been installed in 1973 or 1974. He also began hauling fill material onto the area dedicated to the Parish which was to be a street connecting Airline Highway and the L & A Railroad. At this time, it was discovered that much of the intended subdivision, including this access road from Airline Highway, was officially classified as wetlands by the Army Corps of Engineers. On February 9, 1977, the Corps of Engineers issued a cease and desist order stopping Rivet from going any further.
An application for a Corps of Engineer permit was filed on August 24, 1977. This application was granted on May 2, 1985, allowing him to complete the access road between Airline Highway and the L & A Railroad and to maintain his levees which had been installed in the early 1970’s.
While the application for the Corps of Engineer permit was pending, the Corps contacted the Department of Transportation & Development (hereinafter “DOTD”) to inquire as to possible access to Airline Highway from the property. By letter dated February 3, 1984 DOTD informed the Corps of Engineers that no access to 1-310 would be permitted other than the interchanges at River Road and Airline Highway. DOTD further informed the Corps that no access to Airline Highway would be permitted between La. 626 and Almedia Road affecting this property and forty-six other ownerships. Rivet filed an application for a driveway permit with DOTD on May 7, 1985. By letter dated July 8, 1985, Rivet’s request was denied. The reason for the denial was the intended construction by the state of an interchange at Airline Highway and 1-310 at some point in the future.
On October 9, 1987, this suit was filed. Originally titled a “Petition for Declaratory Judgment,” the suit alleged that the location of the 1-310 project denied plaintiffs access to U.S. Highway 61 and prohibited the commercial development of plaintiffs’ subdivision and, therefore, constituted an appropriation by the state and plaintiffs asked the Court to declare that the property had, in fact and in law, been so appropriated. On June 28, 1988, a Supplemental and Amended Petition was filed wherein the petitioners converted the proceedings from one seeking a declaratory judgment to one seeking monetary damages. While this suit was pending, several other persons who owned lots in the tract of land intervened. As the date of trial, owners of all the lots, except lot 29, were plaintiffs or intervenors in the suit.
On April 18, 1989, DOTD filed a petition for expropriation, taking title to all of the lots *297 nearest to Airline Highway owned by Huey Rivet and Rivet Dragline & Marsh Buggy Company, Inc. That expropriation suit was still pending at the time of trial of this matter.
Trial on the suit before us now occurred on June 22-25, 1992. Judgment was rendered on January 15, 1993 awarding plaintiffs and intervenors $8,099,264.00, plus interest from legal demand and attorney’s fees of 25%.
The DOTD appeals and alleges on appeal that the trail court erred in finding that a compensable taking had occurred by DOTD’s denial of the permit for the access road (or driveway). DOTD further argues that if a taking did occur, the claim prescribed prior to the filing of suit. Finally, the DOTD argues that if a taking did occur, the amount awarded by the trial court was excessive and not supported by the evidence adduced at trial.

ANALYSIS

1. Taking of the Property
The Louisiana Constitution of 1974, Article 1 Section 4 states:
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner[,] * * * [who] shall be compensated to the full extent of his loss.
In Parish of Jefferson v. Tassin, 594 So.2d 525 (La.App. 5 Cir.1992) we observed:
A taking or damaging of property can occur from the official act of expropriating a whole or partial tract of land or from inverse condemnation, which is when property is taken or damaged without the proper exercise of eminent domain. Reymond v. State, Department of Highways [255 La. 425] 231 So.2d 375 (La.1970).
In inverse condemnation, the damage may occur not only to property which is physically invaded, but also to a separate and independent tract of land. Gulf States Utilities Company v. Comeaux, 182 So.2d 187 (La.App. 3 Cir.1966), quoted with approval in State, Department of Highways v. Garrick [260 La. 340] 256 So.2d 111 (La.1971). However, when the damage is claimed to a parcel separate from that which is actually taken, the public body’s liability is limited to special damages which peculiarly affect that property and which are not sustained by the neighborhood generally. Garrick, supra; Comeaux, supra; see also, Ursin v. New Orleans Aviartion Board, 506 So.2d 947 (La.App. 5 Cir. 1987) rev’d on other grds., 515 So.2d 1087 [ (La.1987) ]; Bowden v. State, Dept. of Transp. & Dev., 556 So.2d 1343 (La.App. 3 Cir.1990) writ denied, 563 So.2d 879 [ (La. 1990) ]; Harrington v. Southwestern Electric Power, 567 So.2d 731 (La.App. 2 Cir. 1990).
In addition, when state activity causes a landowner “to sacrifice all economically beneficial uses in the name of common good, that is, to leave his property economically idle, he has suffered a taking.” Lucas v. South Carolina Coastal Council, _ U.S. _, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).
In State, DOTD v. Pace, 588 So.2d 145 (La.App. 4 Cir.1991), the court said:
In an expropriation case the defendant has the burden of proving his claim to a legal certainty and by a reasonable preponderance of the evidence; speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment. R.S. 48:453; State Dept. of Trans. & Dev. v. Estate of Clark, 432 So.2d 405, 408 (La.App. 1st Cir.1983) citing State v. Levy, 242 La. 259,136 So.2d 35, 43 (1961). If a public authority substantially interferes with the owner’s right of access, he has a constitutional right to just compensation for his loss; but where access is not substantially impaired or is impaired only on a temporary basis and/or the inconvenience to the owner is not peculiar to him, but general to the public at large, no recovery is allowed. Dept. of Trans. & Dev. v. Traina, 537 So.2d 792, 795 (La.App. 2nd Cir.1989), writ denied, 540 So.2d 332 [ (La.1989) ].
Department of Highways v. Capone, 298 So.2d 94, 96 (LaApp. 1 Cir.1974) set forth the law pertinent to damages resulting to property absent an actual taking. There the court said:
*298 Our jurisprudence is settled to the effect that, even absent an actual taking, damages resulting to property from the construction of public improvements are com-pensable when such damages are special or peculiar to one’s property in particular, and are not general damages sustained by other properties similarly situated. Rey-mond v. State, Through the Department of Highways, 255 La. 425, 231 So.2d 375 [La. 1970], and authorities therein cited.
When there is no taking, damages which merely cause disturbance, inconvenience or discomfort, and which are an ordinary and general result of a public improvement, are not compensable, but are held to be dam-num absque injuria. Reymond, above.
In the absence of taking, substantial impairment of ingress, when special and peculiar to claimant’s property, entitles an owner to compensation. Efurd v. City of Shreveport, 235 La. 555, 105 So.2d 219 [La.1958]; Patín, et al. v. City of New Orleans, et al., 223 La. 703, 66 So.2d 616 [La.1953]; Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612 [1942].
[Emphasis supplied].
And in Hebert v. State, Department of Highways, 238 So.2d 372, 373-4 (La.App. 3 Cir.1970), writ denied 256 La. 911, 240 So.2d 373 (1970), the court said that:
Even though no portion of an owner’s property is actually taken, he may recover damages i/his ingress and egress are substantially impaired. Harrison v. Louisiana Highway Commission, 202 La. 345,11 So.2d 612; Patín, et al v. City of New Orleans, 223 La. 703, 66 So.2d 616; Efurd v. City of Shreveport, 235 La. 555, 105 So.2d 219.
[Emphasis supplied].
See also Bowden v. State, Dept. of Transp. & Dev., 556 So.2d 1343 (La.App. 3 Cir.1990), writ denied, 563 So.2d 879 (La.1990); State, DOTD v. Semp Russ Plantations, 529 So.2d 487 (La.App. 3 Cir.1988); Dickie’s Sportsman’s Centers v. D. of Transp., 477 So.2d 744 (La.App. 1 Cir.1985).
In the case sub judice, the trial court concluded that there was a “taking” by DOTD when it refused to grant to plaintiffs a driveway permit to allow ingress and egress to and from the subdivision lots to Airline Highway.
As an appellate court, we can modify this factual finding only if we determine that the trial court committed manifest error. West Jefferson Levee Dist. v. Mayronne, 595 So.2d 672 (La.App. 5 Cir.1992); citing Arcen-eaux v. Dominque, 365 So.2d 1330 (La.1979).
At the trial, it was clearly established that the tract in question was denied any access, or ingress and egress, to Highway 61 by virtue of the denial of Rivet’s application for a driveway permit, and that, absent this access, there could be no development of the property into a subdivision.
The state argues that the failure of the parish to develop the infrastructure and the Corps of Engineers classification of the property as Wetlands prevented Rivet from developing the property, and therefore there was no “taking” of property prior to the state’s institution of the 1989 expropriation suit still pending in the district court.
However, Rivet did receive a Corps of Engineer permit in 1985 and the record reflects that there was no other impediment to the development of the subdivision infrastructure by the parish. Therefore, we find that the trial court did not commit manifest error in ruling that the action of the state in denying access or ingress and egress to Highway 61 constituted a taking as defined by the jurisprudence of Louisiana law.
Accordingly, we find no merit to this assignment of error.
2. Prescription
The state argues, in its second assignment of error, that if a taking occurred, it occurred on February 3, 1984 by virtue of the DOTD’s letter to the Corps of Engineers, and is subject to the three year prescriptive period of LSA-R.S. 13:5111. Thus, the state alleges, plaintiffs suit filed on October 9, 1987 was prescribed.
LSA-R.S. 13:5111 provides:
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a *299 parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.
B. The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12, 1975.
[Emphasis supplied].
Thus, it is clear that the three year prescriptive period begins to run from the date of discovery of the taking. Howard v. Louisiana Power & Light Co., 583 So.2d 503 (La.App. 5 Cir.1991); Jungeblut v. Parish of Jefferson, 485 So.2d 974 (La.App. 5 Cir.1986); Guion v. State Dept. of Transportation and Development, 391 So.2d 1367 (La.App. 4 Cir. 1980), writ denied, 397 So.2d 1361 (La.1980).
In this case, the plaintiffs did not discover the “taking” until receipt of DOTD’s letter of July 8, 1985 informing Rivet that his application for a driveway permit (and access to Airline Highway) was denied. Thus, this suit, filed on October 9, 1987 clearly was within the three year prescriptive period of LSA-R.S. 13:5111.
Accordingly, we find the state’s contention that plaintiffs cause of action is prescribed to be without merit.
3. Excessive Compensation
In its last assignment of error, the state alleges that “the evidence does not support compensation in the amount awarded by the trial judge.”
Initially, we note that the Louisiana Supreme Court, in State Through DOTD v. Estate of Davis, 572 So.2d 39 (La.1990) stated:
In expropriation proceedings, much discretion is granted to the trier of fact. The trial judge’s factual determinations as to value of property and severance damages, and his evaluation of and weight given to testimony of expert witnesses, will not be disturbed on review in the absence of manifest error. State, Dept. ofTransp. & Dev. v. Stumpf, 519 So.2d 279 (La.App. 5th Cir.), writ denied, 520 So.2d 753 (La.1988).
Furthermore, as noted by this Court in State Dept. of Transp. & Dev. v. Stumpf, 519 So.2d 279, 283 (La.App. 5 Cir.1988), writ denied, 520 So.2d 753 (La.1988):
Expert opinions as to value are not binding on the trier of fact. They are not ordinarily conclusive and are generally regarded as advisory in character. The purpose of such opinion is to assist the court in its effort to determine the ultimate facts. The weight given to testimony is determined by the professional qualifications and experience of the expert, the facts and studies upon which the opinions are based and the familiarity with the location. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972).
Weight must be given to all expert testimony which is well grounded in sound reasoning. State, Dept. ofTransp. v. Van Willett, [386 So.2d 1023 (La.App. 3 Cir. 1980) ].
Where the experts disagree as to the value of the land taken, the trial court has much discretion in evaluating and determining the weight to be given to each expert. State, etc. v. Estate of Aertker, [404 So.2d 316 (La.App. 3 Cir.1981) ].
J. Bradley Oubre, a real estate expert, testified for Rivet. He conducted an appraisal, the purpose of which was to determine the effect of the removal of access to U.S. Highway 61 by determining the value of the property before and after the denial. He con- *300 eluded that before the denial, the highest and best use of the property was residential and after the denial, the property became land locked. Using a comparable sales method for evaluation, the “before” value of the property was $3,312,600.00 while the “after” value was $213,336.00. Therefore, the denial of access caused a loss of $3,099,264.00. Using the subdivision developmental approach, the average retail value of a lot was $26,000.00 and total profit would have been $3,028,-848.00.
Frederick Guice, a real estate appraiser also testified for Rivet. Using the comparable sales method, Guice obtained a pre-denial value of $3,300,000.00 ($30,000.00 per acre by 110 acres). The post-denial evaluation was $718,000.00 causing a loss of $2,582,000.00.
Guice then discounted the remaining value of $718,000.00 at 12% for 10 years as damages (when the 1-310 project would be completed) because Rivet could not use the property and obtained an amount of $486,824.00 as additional damages for a total loss to Rivet of $3,069,844.00.
Jack Evans testified as an expert real estate appraiser for the state. He testified that he did not utilize the market value approach because the streets had been dedicated and lots had been sold, and therefore any and all sales of tracts of land would not have been comparable.
However, using the subdivision developmental approach, Evans found a pre-denial value of $1,009,430.00 and a post-denial value of $697,108.00, or a loss to Rivet of $312,-322.00.
In his reasons for judgment, the trial judge said:
Common sense dictates that a taking took place within the ambit of federal and state law. As such, this Court is impressed with the testimony of J. Bradley Oubre and Fred Guice.
Fred Guice testified as a real estate expert for plaintiffs and testified that he used the market data approach to find the before value of $3,300,000. He used 110 acres at 30,000 per acre value — as a proposed sale to a buyer who would be interested in developing a subdivision.
The after value figure was $718,000 so the loss in value was $2,582,000. He calculated damages to the remainder at $486,824 resulting in a total just compensation due of $3,069,844.
On a lot sale basis, the subdivision should have sold out in three years with beginning lot sales at $25,000 and ending at $30,250 and utilizing the schedules contained in Guiee’s reports, the total just compensation has been proved.
Bradley Oubre testified that the before value of the property was $3,312,600 and subtracting the after value of $213,336, just compensation would be $3,099,264. Using the subdivision developmental approach, with lot values at $26,000 average retail, profit would have been $3,028,848. (See memorandum of Leon C. Vial, III [Attorney for plaintiffs].)
Therefore, I am of the opinion that there has been a taking and that there be judgment in favor of the plaintiff and interve-nor landowners and against the State of Louisiana, Department of Transportation and Development, in the sum of $3,099,-264.00, together with legal interest from date of judicial demand, for attorney’s fees in the amount of twenty-five (25) percent, and for all costs which may be legally assessable.
Accordingly, it is clear that the trial court accepted at face value the testimony of Bradley Oubre to the effect that the comparable sales method was appropriate to evaluate plaintiffs’ loss and accepted, also at face value, Oubre’s evaluation of the amount of that loss. We note also that the appraisal of Fred Guice, the other appraiser for plaintiffs, was very close to Oubre’s using both methods that Oubre used.
The state argues that the methodology used by plaintiffs’ experts and accepted by the trial court, the comparable sales approach, was error because the land had previously been divided into lots. Thus, it alleges the developmental cost approach was the only method appropriate in this matter. We disagree. While the lots had been divided on paper, the property at issue is still undeveloped and the trial court’s acceptance of the *301 experts’ evaluations, using comparable sales of undeveloped land suitable for residential development, was not erroneous.
The state also argues that the trial court included the value of 29 lots owned by persons who were not parties to this suit in assessing the value of the property. We find merit to this contention. From the testimony, it is clear that Oubre (and Guice) included all the property, including the lots owned by persons not in this suit (“foreign lots”), and land dedicated to the parish, in estimating the loss of value to plaintiffs. We find that the trial court, in accepting this evaluation, should have reduced the award to plaintiffs by the value of the “foreign lots” and the previous dedicated property and not to do so was manifest error.
We note that each expert also used the subdivision developmental approach. It is mathematically obvious, from a reading of the record, that the 29 “foreign” lots owned by persons not privy to this suit were included in the evaluations of plaintiffs’ experts.
While the state’s expert may have deducted the value of the 29 lots, it is equally obvious that the trial court did not accept his testimony as credible.
Accordingly, we will not try to second guess the trial court’s determinations in this matter. Instead, we remand this case in part so that the trial court may adjust the award to delete from its award the amount that it calculates represents damages to the lands of persons not parties to this suit and to assess and fix on the revised award the amount it considers to be “reasonable engineering, appraisal and attorney fees actually incurred” as required by LSA-R.S. 13:5111 et seq.
For the above-discussed reasons, the judgment of the trial court is affirmed in that part of its decision holding that the action of the state in denying a driveway permit for an access road to Airline highway constituted a “taking of property” and its ruling that prescription had not run against plaintiffs; but the amount awarded plaintiffs is set aside and the case is remanded for a determination of the amount of damages suffered by plaintiffs as outlined above, consistent with this opinion.
AFFIRMED IN PART, SET ASIDE IN PART, AND REMANDED.